432 P.2d 276

**ARIZONA CENTRAL CREDIT UNION, an Arizona corporation, Appellant,**

v.

**Ruth HOLDEN, a/k/a Ruth Holden Reidhead, Appellee.**

**No. 1 CA–CIV 329.**

Court of Appeals of Arizona.

Oct. 5, 1967.

Rehearing Denied Nov. 17, 1967.

Review Denied Dec. 19, 1967.

---

Browder & Gillenwater, by Robert W. Browder, Phoenix, for appellant.

Virginia Hash, Phoenix, for appellee.

HATHAWAY, Chief Judge.

Arizona Central Credit Union filed an action in superior court to foreclose a mortgage on property of Ruth Holden, aka Ruth Adam, a divorced woman. The cause, tried to the court on stipulations, pleadings, depositions and exhibits, resulted in a dismissal of the complaint; hence this appeal. The evidence being documentary, we are in an equal position with the trial court to determine the facts, Lindus v. Northern Insurance Company of New York, 6 Ariz. App. 74, 429 P.2d 708 (1967), which we find as follows.

On December 13, 1954 the defendant, then a divorced woman, purchased the land in question, a seven-acre farm in south Phoenix, making a substantial down payment and giving back a mortgage. The defendant and her children moved onto the premises and continued to live there. On January 29, 1955, the defendant married Patrick F. Holden who moved onto the premises with the defendant. On April 14, 1955 the defendant executed a quitclaim deed [1] for the premises to her husband, Patrick Holden, who recorded the deed on the following day.

1. The quitclaim deed read:
   "FOR THE CONSIDERATION of Ten and no/100 ($10.00) DOLLARS the undersigned Ruth Holden (formerly Ruth Adam, a divorced woman), Grantor hereby quitclaim to Patrick F. Holden, Grantee all of my interest in and to the following described property situated in the County of Maricopa, State of Arizona:

   \*     \*     \*     \*     \*

   "TO HAVE AND TO HOLD the same to the grantee his heirs or assigns forever."

The defendant explained that she executed the quitclaim deed because:

"He [her husband, Patrick Holden] suggested it. I hate to admit it, but I didn't even know what a quitclaim deed was. I didn't check. I trusted him completely. He said this doesn't mean anything, this is so that we won't have to pay so many taxes. I signed it."

Though the quitclaim deed bears an acknowledgment purportedly executed before a notary, the defendant testified that she did not acknowledge the deed before a notary public but that she signed the deed in the presence of her husband at home and returned it to him.

On April 15, 1955, the defendant's husband filed a veteran's exemption on the land with the county assessor of Maricopa County, claiming the land as his sole and separate property. The county assessor allowed the veteran's exemption for the years 1955 through 1961. Defendant testified that all of the payments on the land were made from her earnings and that her husband contributed nothing to these payments.

On June 13, 1959, Patrick Holden made a loan application to the plaintiff for $10,000, disclosing in that application that he was married to the defendant. The only record search made on the property was that of the plaintiff's attorney. He stated in his written search:

"This is to certify that I have made a search of the records in the office of the County Recorder regarding the property owned by PATRICK F. HOLDEN AND RUTH HOLDEN. * * *"

The plaintiff prepared the note and mortgage to be executed by Patrick Holden and the defendant and these were executed on June 18, 1959 by Patrick F. Holden and allegedly by his wife, the defendant, before a notary public employed by plaintiff. The plaintiff admits that the purported signature of the defendant on both the note and the mortgage is not the true signature of the defendant. How or when this forgery took place is not known. The defendant was not aware of the loan and mortgage until this action was threatened by the plaintiff.

The defendant and Patrick Holden separated in September of 1960 and the defendant was granted an absolute divorce on January 12, 1961. Up to this time the couple had apparently resided on the land. The defendant testified that certain of her property was her separate property and that the land in question was considered community property.[2]

The plaintiff contends that the land in question was separate property at the time the defendant executed the quitclaim deed to her husband and that upon execution and delivery of this deed the land became the sole and separate property of Patrick Holden. The plaintiff further contends that, disregarding the effect of the quitclaim deed, the defendant is estopped from claiming ownership in this property as against the plaintiff since she caused the land to

2. "Q Did you ever think of putting your Clarendon property [defendant's separate property and not the land in question] in your husband's name, Pat's name?
A He suggested it a couple of times and I didn't do it. I felt that he had no claim on that whatsoever. He never lived there; he never contributed; he never touched it. It was leased and was paying for itself.
Yes, he suggested it, but I didn't consider it.
Q Did you feel differently about the ranch [the land in question]?
A Well, we lived on the ranch. Not really, but I felt if we continued to live there, it should be community property, yes.
Q Well, did you feel that way in April of 1955 when you signed this quitclaim deed?
A Yes. Yes, I felt if two people lived on a property, that—and you are going to work on it together, our intentions at that time were to work it out together and live there and make our home there for some time, probably, that it should be a mutual thing."

appear on record as the sole and separate property of her husband, Patrick Holden.

We agree that the land was the separate property of the defendant at the time she executed the quitclaim deed. A.R.S. § 25-213, subsec. B. We disagree, however, with plaintiff's interpretation of the effect of the quitclaim deed. We do not believe that the land became the sole and separate property of Patrick Holden as a result of the quitclaim deed executed by the defendant.

■ A.R.S. § 25-211, subsec. A states that all property acquired during marriage is community property, with certain exceptions, none of which apply here. This statute creates a presumption that all property acquired during marriage is community property. Anderson v. Anderson, 65 Ariz. 184, 177 P.2d 227 (1947). This presumption has been held to apply irrespective of which spouse holds the legal title. Blackman v. Blackman, 45 Ariz. 374, 43 P.2d 1011 (1935), and Schwartz v. Schwartz, 52 Ariz. 105, 79 P.2d 501, 116 A.L.R. 633 (1938). Though not conclusive, our Supreme Court has stated that the presumption is nearly so. Smith v. Smith, 71 Ariz. 315, 227 P.2d 214 (1951), and Kennedy v. Kennedy, 93 Ariz. 252, 379 P.2d 966 (1963). Porter v. Porter, 67 Ariz. 273, at page 279, 195 P.2d 132 at page 136 (1948), held that this presumption is not dispelled upon the production of any evidence to the contrary and stated, "The Court must be satisfied that the property really is separate before it can state that the presumption has been dispelled." The burden of rebutting this presumption is on the one claiming the property to be separate and where there is any doubt in the court's mind, the property will be treated as community property. Tyson v. Tyson, 61 Ariz. 329, 149 P.2d 674 (1944).

■ In Arizona, spouses may convey their separate or community property interests to one another. Schofield v. Gold, 26 Ariz. 296, 225 P. 71, 37 A.L.R. 275 (1924), and Tyson v. Tyson, supra. In the *Tyson*

case, 61 Ariz., at page 338, 149 P.2d at page 678, the court stated:

"In the present case we cannot say that a conveyance by the husband to the wife implies a conveyance to her as separate property because at the time of the proposed conveyance the property was not the community property of the parties but his separate property."

In that case our Supreme Court went on to say that the intentions of the parties, established by the conveyance and surrounding facts, shall govern. At page 340, of 61 Ariz., 149 P.2d at page 679 the court stated:

"If the case is at all doubtful, the following Arizona cases are in favor of treating that which either spouse may own as community property (citations omitted)."

■ The quitclaim deed in this case does not specify that the grantee, Patrick Holden, shall hold the property as his sole and separate property. We believe that the facts surrounding the execution of this quitclaim deed by the defendant evinced an intention of the parties that the land be converted to community property. The plaintiff, who claims through the rights of the husband, has presented no evidence to support its contention that the quitclaim deed conveyed the land to the husband as his separate property. We conclude that the quitclaim deed did not operate to convey the land in question to the husband, Patrick Holden, as his sole and separate property.

The effect of this conclusion is that the subsequent mortgage and notes, upon which the defendant's name was forged, were totally void and therefore precluded the plaintiff's action in this case. A.R.S. § 33-452; Greer v. Frost, 41 Ariz. 551, 20 P. 2d 301 (1933); Cook v. Stevens, 51 Ariz. 467, 77 P.2d 1100 (1938); Wilson v. Metheny, 72 Ariz. 339, 236 P.2d 34 (1951); and, Rundle v. Winters, 38 Ariz. 239, 298 P. 929 (1931).

■ The plaintiff further contends that the defendant having executed the quitclaim

deed, is estopped from claiming any interest in the property. The plaintiff does not claim to be a bona fide purchaser, i. e., that it had no notice of the marriage relationship between defendant and Patrick Holden. Rather, the plaintiff's contention is that the mere recording of the quitclaim deed by the husband should allow the plaintiff to secure the $10,000 loan to the husband by the mortgage on the property.

In discussing this problem, Professor Jack J. Rappeport, citing the Washington Statutes § 26.16.095 and § 26.16.100 (1953) and cases of Campbell v. Sandy, 190 Wash. 528, 69 P.2d 808 (1937), and Dane v. Daniel, 23 Wash. 379, 63 P. 268 (1900), states the following which we believe to be the correct rule:

> "But this [that a purchaser may be a bona fide purchaser] theoretically applies only to such persons as purchase community realty without knowledge of the existence of the marriage relation and who could not, with reasonable diligence have obtained such knowledge. In practice, the cases have made it so difficult to qualify as an 'actual bona fide purchaser' that the only safe modus operandi is an assumption in all cases that real property interests are owned by married persons as tenants in community property, until the contrary is clearly shown."

Rappeport, The Husband's Management of Community Real Property, 1 Ariz.L. Rev. 13, 49 (1959).

We conclude that the plaintiff was not a bona fide purchaser but had actual notice of the marital relationship between the defendant and Patrick Holden and of the community character of the land in question. This fact is evidenced by Patrick Holden's application for the loan and the plaintiff's own attorney's record search. The defendant not having joined in the execution of the note and mortgage sued upon by the plaintiff, the dismissal of the plaintiff's complaint in the trial court is affirmed.

Affirmed.

MOLLOY and KRUCKER, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.