933 P.2d 1222

**Julia M. HATCHER, Petitioner–Appellant,**

v.

**Marvin L. HATCHER, Respondent–Appellee.**

**No. 1 CA–CV 95–0426.**

Court of Appeals of Arizona,
Division 1, Department E.

Aug. 29, 1996.

Reconsideration Denied Sept. 20, 1996.

Review Denied March 25, 1997.

---

William B. Hurst, P.C. by William B. Hurst, Flagstaff, for Petitioner–Appellant.

Aspey, Watkins & Diesel, P.L.L.C. by Harold L. Watkins and Whitney Cunningham, Flagstaff, for Respondent–Appellee.

## OPINION

THOMPSON, Judge.

Appellant Julia M. Hatcher (wife) seeks review of a dissolution decree awarding jointly-held real property to Appellee Marvin L. Hatcher (husband). Wife contends that the trial court erred in finding that the proceeds from a disability insurance settlement awarded to husband, and the family residence and an apartment complex purchased with the insurance proceeds and held in joint tenancy, were husband's separate property. We agree that the insurance proceeds were, in part, community property, and reverse.

### FACTS AND PROCEDURAL HISTORY

The parties were married in Arizona on December 6, 1980. They had four children during the marriage. Husband worked for Ralston Purina Company, and voluntarily agreed to participate in an insurance program offered by his employer in April 1982. The "Voluntary Personal Accident Plan" (VPA) provided for benefits to the employee's family or to the employee in the event of accidental death, dismemberment or disability. Husband initially designated his wife and son as beneficiaries of the insurance policy, subsequently amending the policy to include coverage for his three after-born children. Premiums for the VPA program were automatically deducted from husband's paycheck.

In November 1984, husband suffered the loss of his right hand and the partial loss of his right arm in a work-related accident. Husband missed work for three months because of his injuries. During this time, husband received a small worker's compensation award which went toward household expenses. Under the VPA policy, he received a lump sum settlement of $120,000 and monthly structured payments for a period of fifty-four months.

A portion of the VPA proceeds was placed in a joint account which the husband and wife maintained at a local credit union, and later used as a down payment on the purchase of the family residence in Flagstaff, Arizona. The parties subsequently used payments from the monthly structured disability settlement to pay the remaining balance owed on the house. Title to the residence was taken by husband and wife as joint tenants with right of survivorship.

The parties also used some of the insurance settlement proceeds to construct an apartment complex on a parcel of land owned by husband prior to marriage. Two different lenders provided construction and permanent financing for the apartments. Both husband and wife signed the promissory note and held title to the property as joint tenants with right of survivorship. The rental income produced by the apartments fully satisfied each month's mortgage payments owed on the property.

Wife filed for divorce in February 1991. At trial, the court found that the insurance settlement proceeds were husband's separate property. The court held that, although the residence and apartment complex were held in joint tenancy, husband had "shown by clear and convincing evidence that it was not his intent to make a gift of the real property to the community." The court therefore ordered that the real property was the separate property of husband. Wife appeals from these determinations.

### DISCUSSION

On appeal, wife argues that the VPA insurance proceeds constituted community property because the premiums were paid with community funds and because the settlement monies were received during the course of the parties' marriage. Alternatively, wife contends that even if the insurance proceeds were in fact husband's separate property, he failed to rebut the presumption created by the joint tenancy deeds for the residence and apartment complex that husband intended to make a gift of these properties to her.

■ We view all the evidence and reasonable conclusions therefrom in the light most favorable to supporting the trial court's decision regarding the nature of the property as either community or separate. *Sommerfield v. Sommerfield,* 121 Ariz. 575, 577, 592 P.2d 771, 773 (1979). In Arizona, the presumption is that all property acquired by either spouse during marriage is community property, except that which is acquired by gift, devise or descent. *Id.;* Ariz.Rev.Stat. Ann. (A.R.S.) § 25–211.

■ We first consider the character of husband's VPA insurance benefits. Husband relies on *Jurek v. Jurek,* 124 Ariz. 596, 606 P.2d 812 (1980), for his assertion that the disability benefits received for his personal injuries were separate property. In *Jurek,* our supreme court held that a recovery for personal injuries is comprised of various component parts which may be either community or separate in nature. *Id.* at 597–98, 606 P.2d at 813–14. Compensation for any expenses incurred by the community for medical treatment and any loss of wages resulting from the personal injury are deemed community property. *Id.* at 598, 606 P.2d at 814. Any portion of the recovery intended to provide compensation for injury to a spouse's personal well-being is considered that spouse's separate property. *Id.* Husband contends that the VPA proceeds were wholly intended to compensate him for his personal injuries and, therefore, were his separate property under *Jurek.*

Two Arizona cases subsequent to the *Jurek* decision are cited by husband to support his position. In *In re Marriage of Kosko,* 125 Ariz. 517, 611 P.2d 104 (App.1980), we held that disability benefits are the separate property of the disabled spouse after dissolution. In characterizing the nature of disability benefits, we noted:

> Whether paid for by the employer or the employee, the amount expended [for disability insurance] is to protect against a risk of disability which may, but usually does not, occur. The amount paid to pro-

tect against this risk does not accumulate in a fund, nor does it build into an equity having an ascertainable value. Although the entitlement to this benefit may be attributed to employment and thus have a community origin, the money so expended does not produce a community asset subject to division at dissolution. What it produces is coverage for the *individual spouse* against the risk of disability and loss of future earning ability.... While disability income protection may arise during marriage, it is for the protection of community earnings during the existence of the marriage and for the protection of separate earnings of the disabled spouse in the event of dissolution.

125 Ariz. at 518–19, 611 P.2d at 105–06. Thus, consistent with *Jurek,* this court concluded that disability benefits are the separate property of the disabled spouse after dissolution. *Id.* Division Two of this court adopted the same view of disability benefits in *McNeel v. McNeel,* 169 Ariz. 213, 818 P.2d 198 (App.1991).[1]

Neither of these cases is dispositive here. While *Kosko* and *McNeel* establish that any portion of disability proceeds which represent compensation for post-dissolution earnings of the injured spouse is the separate property of that spouse, neither case clearly addresses the proper characterization of disability benefits received *during* marriage. Whether a non-disabled spouse may claim a community interest in disability benefits received by an injured spouse during marriage has not been directly decided in Arizona.

■ We conclude that the proceeds from a disability insurance policy for an accident occurring during marriage may be subject to division at dissolution. Contrary to wife's assertion, the determination that a disability insurance policy was acquired with community funds does not necessarily lead to the conclusion that the disability benefits are community property. *Lachney v. Lachney,* 529 So.2d 59, 64 (La.Ct.App.1988). Rather, like personal injury recoveries, disability

---

1. Other community property states consider disability benefits to be community property. *See, e.g., Guy v. Guy,* 98 Idaho 205, 560 P.2d 876 (1977) (group term disability policy); *Hughes v.* *Hughes,* 96 N.M. 719, 634 P.2d 1271 (1981) (civil service disability policy); *Busby v. Busby,* 457 S.W.2d 551 (Tex.1970) (disability retirement benefits).

benefits have various component parts. *See Villasenor v. Villasenor,* 134 Ariz. 476, 657 P.2d 889 (App.1982) (disability retirement benefits divided into community and separate property). The primary intent of a disability policy is to insure against the risk of loss of the insured's future earning capacity. *In re Marriage of Leland,* 69 Wash.App. 57, 847 P.2d 518, 526 (1993). Indeed, by purchasing disability insurance, a married couple protects against the possibility of economic loss caused by injury to either spouse's earning ability. *See Kosko,* 125 Ariz. at 518, 611 P.2d at 105 (disability insurance provides coverage "against the risk of disability and loss of future earning ability"). While the marital community exists, a disabled spouse's reduced earning capacity results in a loss to the community. *Luna v. Luna,* 125 Ariz. 120, 125, 608 P.2d 57, 62 (App.1979); *In re Marriage of Jones,* 13 Cal.3d 457, 119 Cal. Rptr. 108, 111, 531 P.2d 420, 423 (1975). At dissolution, however, the loss to the community ceases and any reduced earning capacity becomes the separate loss of the disabled spouse. 119 Cal.Rptr. at 111–12, 531 P.2d at 423–24.

■ Here, the loss of husband's arm and hand resulted in both a loss of earnings and a permanent impairment to his future earning ability.[2] Workers' compensation insurance provided compensation, at least in part, for any lost earnings.[3] The disability policy protected the community against the risk of loss or reduction of the insured's future earning capacity. Because husband received a lump sum disability policy settlement for a disability that extended through the remainder of marriage and beyond, at least part of the insurance proceeds compensated the community for husband's reduced earning capacity during marriage. We conclude that the portion of the disability proceeds which represented compensation for husband's loss of earning ability during marriage was community property. *Queen v. Queen,* 308 Md. 574, 521 A.2d 320, 327 (1987); *cf. In re Marriage of Cupp,* 152 Ariz. 161, 163, 730 P.2d 870, 872 (App.1986) (portion of lump sum workers' compensation award for lost wages during marriage is a community asset). The remainder of the lump sum payment, although paid during marriage, was in lieu of future (post-dissolution) lost earning capacity due to husband's personal injuries. This portion is husband's separate property.

■ By treating the portion of disability benefits received during marriage as community property, we extend by analogy the distinction between personal injury recoveries and disability insurance proceeds articulated in *Kosko.* In a personal injury action, recovery may be had for any diminution in earning ability as distinct from loss of earnings. *Mandelbaum v. Knutson,* 11 Ariz.App. 148, 149, 462 P.2d 841, 842 (1969). Just as recovery for loss of earning capacity must be proven by such factors as plaintiff's age, health, life expectancy, habits, occupation, experience, and training in personal injury cases, the trial court in dissolution proceedings should similarly consider this type of evidence in equitably dividing disability proceeds received during marriage. *Id.* at 149–50, 462 P.2d at 842–43. The trial court in this case erred in determining that all of the disability proceeds constituted the husband's separate property. A portion of the proceeds was community property because it represented compensation for husband's lost earning ability while married.

---

2. It is clear from the record that husband's injuries resulted in an impairment to his earning capacity. At trial, he testified that "because of the loss of my arm, I can't just go out and get a job anyplace else anymore. I couldn't go out anyplace else and get a job. I'm not trained or educated in any other way to go out and make a living."

3. Workers' compensation is awarded to an injured employee in lieu of lost wages and is based on lost earning capacity during the period of disability. *Bugh v. Bugh,* 125 Ariz. 190, 192, 608 P.2d 329, 331 (App.1980). In this case, husband received a workers' compensation award for only three months. Accordingly, the disability policy payments, which extended over a period of fifty-four months, did not provide significant, if any, overlapping compensation for husband's diminution in earning ability. Further, the disability proceeds were intended, in part, to provide compensation for any loss of husband's power to earn in the future, whereas the three-month workers' compensation award clearly did not contemplate any future economic harm.

The trial court's award of the real properties to husband as his separate property was based on the erroneous determination that the insurance proceeds were exclusively the property of husband. Indeed, in order to award the real properties to husband as his separate property, the court had to find that the insurance proceeds with which the residence and the apartment complex were purchased belonged solely to husband. *Blaine v. Blaine*, 63 Ariz. 100, 108–09, 159 P.2d 786, 790 (1945) (where claim is made that property purchased during marriage is the separate property of one of the spouses, fund with which property was acquired must be clearly shown to have been separate property of such spouse). Because the trial court erred in this finding, the award to husband cannot stand, and we must remand this case to the trial court for additional fact-finding and disposition. Because the funds used to purchase the real properties were part community funds and part husband's separate property, the trial court must revisit wife's claim that, in placing title in joint tenancy with wife, husband made a gift of his separate property to her. *See, e.g., Cely v. DeConcini, McDonald, Brammer, Yetwin & Lacy, P.C.*, 166 Ariz. 500, 506, 803 P.2d 911, 917 (App.1990) (where further fact-finding is required after reversal on appeal, reviewing court will remand to trial court for resolution of unresolved issues).

Where separate funds of one spouse have been used to purchase real property and title has been taken in joint tenancy, a presumption arises that a gift to the non-contributing spouse was intended. *Battiste v. Battiste*, 135 Ariz. 470, 472, 662 P.2d 145, 147 (App.1983). The spouse seeking to overcome that presumption has the burden of establishing the separate character of the property by clear and convincing evidence. *Cupp*, 152 Ariz. at 164, 730 P.2d at 873. The presumption of gift cannot be overcome simply by husband's after-the-fact testimony that the property was placed in joint tenancy for some other reason than as an intended gift. *Valladee v. Valladee*, 149 Ariz. 304, 307, 718 P.2d 206, 209 (App.1986). If, after considering the evidence in light of these principles, the trial court sustains the presumption of gift, the community and joint property must be equitably divided between the parties; if wife's claim of gift is again rejected, the trial court must assign each spouse's separate property and then equitably divide community and joint property. A.R.S. § 25–318(A).

## CONCLUSION

We find that the portion of the VPA disability proceeds which represented compensation for husband's loss of earning ability during marriage should have been classified as community property. The part of the disability benefits representing post-dissolution diminution in earning capacity was his separate property. The trial court must determine whether husband's use of some of these disability proceeds classified as separate property to purchase the residence and apartment complex in joint tenancy with right of survivorship constituted a gift to his wife. We reverse the trial court's classification of the VPA disability proceeds and the residence and apartment complex as husband's separate property, and remand with an order directing additional fact-finding and disposition, including an equitable division of the properties between the parties, in accordance with this opinion and pursuant to A.R.S. § 25–318(A).

GERBER, P.J., and VOSS, J., concur.