IN THE

# ARIZONA COURT OF APPEALS
### DIVISION TWO

---

IN RE THE MARRIAGE OF

JACQUELINE FOSTER,
*Petitioner/Appellee,*

*and*

CHARLES SIDNEY FOSTER,
*Respondent/Appellant.*

No. 2 CA-CV 2015-0192
Filed June 8, 2016

---

Appeal from the Superior Court in Cochise County
No. DO201300543
The Honorable Karl D. Elledge, Judge

**AFFIRMED**

---

COUNSEL

Jacqueline Foster, McNeal
*In Propria Persona*

Bays Law PC, Sierra Vista
By P. Randall Bays
*Counsel for Respondent/Appellant*

**OPINION**

Presiding Judge Vásquez authored the opinion of the Court, in which Chief Judge Eckerstrom and Judge Miller concurred.

V Á S Q U E Z, Presiding Judge:

¶1　　　　Charles Foster appeals from the trial court's decree of dissolution of his marriage to Jacqueline Foster. He argues the court erred by awarding guns that he contends were his separate property to Jacqueline as part of the community-property disposition. The issue presented on appeal is whether the presumption that all property acquired during the marriage is community property applies to guns Charles claims he inherited, thereby requiring him to prove their separate-property character by clear and convincing evidence. For the reasons stated below, we conclude the answer is yes and affirm.

**Factual and Procedural Background**

¶2　　　　We view the facts in the light most favorable to upholding the trial court's decree. *See Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, n.1, 169 P.3d 111, 112 n.1 (App. 2007). Charles and Jacqueline were married in December 1957. They had three children, including their now-adult daughter Missy and son Jack. Throughout their marriage, Charles bought and sold guns. Charles also inherited numerous guns from family members, including his brother John. According to Jacqueline, Charles "always" told her that they "would retire on the guns." In June 2013, Charles gave Missy thirty-eight guns to distribute to family members upon his death.

¶3　　　　In July 2013, Jacqueline filed a petition for dissolution of marriage. The following year, while the dissolution was pending, the Cochise County property where the parties were residing caught fire and dozens of guns burned. At the dissolution trial, the parties disputed how many and which guns still existed. Charles maintained the only guns that had survived the fire were the thirty-

eight that Missy was holding. Jacqueline requested "half of the guns, even, because the guns were held over [her] head all those years as [their] investments; [their] retirement." She also wanted all the guns that Charles had inherited from John and promised to Jack.

¶4        In its under-advisement ruling, the trial court found as follows:

> According to [Charles], the thirty-eight guns he currently possesses or controls are his sole and separate property. . . .
>
> Here, [Charles] did not sustain his burden that all of the thirty-eight guns in question are his sole and separate property. While there is no dispute a number of the guns were inherited, [Charles] produced no records in court (other than self-serving documents) to trace the acquisition of the guns which were not inherited. Accordingly, the guns which were not inherited are community property and subject to division by the Court.

The court then awarded Jacqueline fourteen of the thirty-eight guns. Charles filed a motion for reconsideration, arguing he had inherited six of the guns awarded to Jacqueline from his brother and, consequently, they should be his separate property. The court denied the motion and entered a decree of dissolution of marriage. This appeal followed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

**Discussion**

¶5        Charles argues the trial court erred by characterizing as community property the fourteen guns he allegedly inherited from his brother, six of which were awarded to Jacqueline. The characterization of property is a question of law we review de novo. *Helland v. Helland*, 236 Ariz. 197, ¶ 8, 337 P.3d 562, 564 (App. 2014);

3

*In re Marriage of Pownall*, 197 Ariz. 577, ¶ 15, 5 P.3d 911, 915 (App. 2000). However, we "defer to the trial court's determination of witnesses' credibility and the weight to give conflicting evidence." *Gutierrez v. Gutierrez*, 193 Ariz. 343, ¶ 13, 972 P.2d 676, 680 (App. 1998); *see also Hurd v. Hurd*, 223 Ariz. 48, ¶ 16, 219 P.3d 258, 262 (App. 2009) ("Even though conflicting evidence may exist, we affirm the trial court's ruling if substantial evidence supports it.").

¶6        Community property includes "[a]ll property acquired by either husband or wife during the marriage . . . except for property that is . . . [a]cquired by gift, devise or descent." A.R.S. § 25-211(A)(1). By contrast, separate property consists of "[a] spouse's real and personal property that is owned by that spouse before marriage and that is acquired by that spouse during the marriage by gift, devise or descent, and the increase, rents, issues and profits of that property." A.R.S. § 25-213(A). There is a legal presumption that all property acquired during marriage is community property. *Sommerfield v. Sommerfield*, 121 Ariz. 575, 577, 592 P.2d 771, 773 (1979); *Porter v. Porter*, 67 Ariz. 273, 279, 195 P.2d 132, 136 (1948); *see also Ariz. Cent. Credit Union v. Holden*, 6 Ariz. App. 310, 313, 432 P.2d 276, 279 (1967) (describing § 25-211(A) as creating presumption).

¶7        But Charles argues the presumption under § 25-211(A) applies to "all property acquired by either husband or wife during the marriage . . . except for property that is . . . acquired by gift, devise or descent." He thus maintains the trial court erred by concluding he had to "clearly trace[]" inherited property "to prove that it fits within the exception to . . . § 25-211," citing *Hatcher v. Hatcher*, 188 Ariz. 154, 933 P.2d 1222 (App. 1996). In that case, this court stated: "In Arizona, the presumption is that all property acquired by either spouse during marriage is community property, except that which is acquired by gift, devise or descent." *Hatcher*, 188 Ariz. at 157, 933 P.2d at 1225. We also recognize that in *Evans v. Evans*, 79 Ariz. 284, 286, 288 P.2d 775, 776 (1955), our supreme court noted that "[p]roperty acquired subsequent to marriage, except through gift, devise or descent, is presumed to be community property."

¶8        But *Hatcher* did not involve a dispute over property claimed to have been acquired by gift, devise, or descent. *See Town of Chino Valley v. City of Prescott*, 131 Ariz. 78, 81, 638 P.2d 1324, 1327 (1981) (because dicta is court's statement on question not necessarily involved in case, it is not controlling as precedent). And neither *Hatcher* nor *Evans* explains how the character of the property is determined to be separate property if not initially presumed to be community property. Instead, these cases appear to recognize the proposition that property shown to have been acquired "during the marriage by gift, devise or descent" is the separate property of the spouse claiming the exception. § 25-213(A); *see Evans*, 79 Ariz. at 286, 288 P.2d at 776; *Hatcher*, 188 Ariz. at 157, 933 P.2d at 1225.

¶9        The presumption that all property acquired during the marriage is community property is "strong." *Carroll v. Lee*, 148 Ariz. 10, 16, 712 P.2d 923, 929 (1986). To overcome that presumption, the spouse maintaining the property was acquired by that spouse as a "gift, devise or descent," § 25-211(A)(1), and is, thus, separate property, "has the burden of establishing the separate character of the property by clear and convincing evidence." *Cockrill v. Cockrill*, 124 Ariz. 50, 52, 601 P.2d 1334, 1336 (1979); *see also Davis v. Davis*, 149 Ariz. 100, 102, 716 P.2d 1037, 1039 (App. 1985) (applying community-property presumption to gift of stock to husband from his mother during marriage). However, "where there is any doubt in the court's mind, the property will be treated as community property." *Ariz. Cent. Credit*, 6 Ariz. App. at 313, 432 P.2d at 279; *see also Porter*, 67 Ariz. at 279, 195 P.2d at 136.

¶10        At trial, Charles offered evidence that he had inherited the fourteen guns from his brother.[1] Specifically, the trial court admitted Charles's Exhibit Z, which is a handwritten list prepared by Missy showing the thirty-eight guns she is holding. The list is organized by where each gun came from—the fourteen allegedly inherited from Charles's brother are listed under the header "John

---

[1]Neither party presented evidence showing when John died and Charles inherited the guns. However, given the nature of Charles's argument, we assume Charles inherited the guns during the marriage.

Foster." Exhibit Z also identifies the guns' serial numbers. Missy explained she had prepared the list based on information from Charles and a ledger he had prepared that no longer exists.

¶11 However, the trial court rejected this evidence, and we cannot say it erred in doing so. *See Hurd*, 223 Ariz. 48, ¶ 16, 219 P.3d at 262. Charles's testimony as to Exhibit Z was minimal, and he never confirmed that the list of guns prepared by Missy was accurate. Moreover, there was conflicting testimony that only the trial court could resolve based on consideration of all the evidence. For instance, during his testimony, Charles identified John Foster as both his brother and his uncle. And Exhibit Z contains two separate lists of guns purportedly inherited from Charles's brother—fourteen are listed under "John Foster" and four are listed under "John Foster Estate." The court found the latter four to be Charles's separate property and awarded those to him. [2] Given the court's determination that Charles failed to establish the fourteen guns were inherited, we cannot say the court erred in characterizing the guns as community property. *See Helland*, 236 Ariz. 197, ¶ 8, 337 P.3d at 564.

¶12 Charles nevertheless maintains the trial court relied only on Exhibit Z and failed to consider the testimony of Charles, Missy, and Jacqueline, as well as Jacqueline's Exhibit 6.[3] He asserts

---

[2]The trial court also found that the guns Charles had inherited from his grandfather and great aunt, as identified in Exhibit Z, were Charles's separate property. Accordingly, we disagree with Charles that the court "failed to identify (characterize) those guns that it determined to be inherited from those guns it determined to be community."

[3]Charles also asserts the trial court failed to consider Exhibits A and B to the decree, which he submitted as part of his post-trial memorandum. However, Exhibit B is the same as Jacqueline's Exhibit 6, only with checkmarks indicating what Charles thought Jacqueline should be awarded. And Exhibit A is another list of personal property including ten guns, none of which clearly match the description and serial numbers in Exhibit Z for the fourteen guns at issue here.

that, if the court "properly considered all of that evidence," it would have concluded "all the guns in Exhibit Z were Charles'[s] sole and separate property." But the court's under-advisement ruling indicates it considered "the evidence introduced at trial." Charles has not identified the portions of the trial testimony that the court failed to consider and would have established these guns are his separate property. We recognize that Missy relied on Exhibit Z to suggest that Charles had inherited the fourteen guns, but neither Charles nor Jacqueline testified with any specificity that Charles had inherited these particular guns.

¶13        As for Exhibit 6, in which Jacqueline identified all the personal property she wanted to be awarded, Jacqueline did request all of John's guns that Charles had promised to Jack. We acknowledge that property acquired by a spouse "during the marriage by gift, devise or descent" is that spouse's separate property and that awarding Charles's separate property to Jacqueline would have been improper. § 25-213(A). But the trial court appears to have disregarded Jacqueline's request. *See Hart v. Hart*, 220 Ariz. 183, ¶ 18, 204 P.3d 441, 446 (App. 2009) (we presume trial court knows and follows law). Indeed, the court determined what was community property and then divided that property pursuant to A.R.S. § 25-318(A).

¶14        Lastly, Charles argues the trial court erred in awarding the eight guns to Jacqueline "despite the fact that the guns had been transferred out of Charles'[s] possession prior to the commencement of divorce with the knowledge of Jacqueline." He points out that Missy, who is holding the guns, thinks they belong to her and that the court should have ordered a monetary award rather than awarding Jacqueline the guns. Because Charles never raised this argument below, we could deem it waived. *See Airfreight Express Ltd. v. Evergreen Air Ctr., Inc.*, 215 Ariz. 103, ¶ 17, 158 P.3d 232, 238-39 (App. 2007) (party must timely present arguments to trial court so it has opportunity to rule; if party fails to do so, we may deem argument waived on appeal).

¶15        Even assuming the argument is not waived, we cannot say the trial court erred. Charles seems to suggest that the guns were disposed of and are no longer owned by or within his or

Jacqueline's control. Although Missy testified that "the guns are mine," both Charles and Missy explained that they "are with Missy" so she can "distribute [them] around [the] family" after Charles dies. Missy also testified the guns are to be distributed upon her "father's recommendation" but "[h]e has made no recommendations . . . yet." Thus, based on this testimony, Missy appears to be holding the guns in the capacity of an executor. *See Executor*, *Black's Law Dictionary* (10th ed. 2014) ("A person named by a testator to carry out the provisions in the testator's will."). It does not appear that Charles has relinquished control and management. *See Mortensen v. Knight*, 81 Ariz. 325, 334, 305 P.2d 463, 469 (1956) ("dispose" in dissolution context means relinquish control and management).

## Disposition

¶16        For the reasons stated above, we affirm.