301 Ga. 532
FINAL COPY

S17F0576.  HARDIN v. HARDIN.

HINES, Chief Justice.

Tracy Hardin ("Wife") was granted a discretionary appeal from the grant of partial summary judgment to John Hardin ("Husband") in this divorce case.[1] The issue on appeal is whether the trial court erred in concluding as a matter of law that certain disability benefits issued pursuant to an insurance policy are non-marital property and are not subject to equitable division.  For the reasons that follow, we affirm.

The parties were married in 1989.  AMEX Assurance Company issued an "Accident Protection Plan" insurance policy to Husband in 2006.  The policy included an "Accidental Permanent Total Disability" benefit of $1,500,000 that would be paid if an accidental bodily injury directly caused the insured to be

---

[1] We have jurisdiction over this case because Wife filed her application and notice of appeal before January 1, 2017.  "[T]he Appellate Jurisdiction Reform Act of 2016, Ga. L. 2016, p. 883, gives the Court of Appeals subject matter jurisdiction over '(a)ll divorce and alimony cases' in which a notice of appeal or application to appeal is filed on or after January 1, 2017.  Id. §§ 3-1 (codified at OCGA § 15-3-3.1 (a) (5)), 6-1 (c)."  *Merrill v. Lee*, 301 Ga. 34, 36 (1), n. 1 (799 SE2d 169) (2017).

permanently totally disabled.[2]  The policy also specified that it would "provide[ ] limited benefits which are supplemental and [would] not provide basic hospital, basic medical, or major medical coverage," and that it was "not in lieu of and [would] not affect any requirements for coverage by any Workers' Compensation Act or similar law."

Husband and Wife paid the policy premiums out of marital funds until Husband was catastrophically injured on March 24, 2011.[3]  At that time, he was 42 years old.  One year after Husband's injury, AMEX determined that he was permanently and totally disabled, and it paid him the full policy benefit.  The money was deposited into the parties' joint checking account and then transferred to two of the parties' joint investment accounts.

---

[2] In relevant part, the policy defined "Injury" as "bodily injury . . . which is sustained as a direct result of an unintended, unanticipated accident that is external to the body and . . . which directly (independent of sickness, disease, mental incapacity, bodily infirmity, or any other cause) causes a covered loss."  The policy also defined "Permanently Totally Disabled/Permanent Total Disability" to include, among other things, "Paraplegia" or "Quadriplegia," and provided that, "[i]f, as a result of an Injury, the Insured Person is rendered Permanently Totally Disabled within 365 days of the accident that caused the Injury, the Company will pay 100% of the [$1,500,000] at the end of 12 consecutive months of such Permanent Total Disability."

[3] Husband is paralyzed from the chest down due to a 23-foot fall from a platform.  He can move his arms and hands a little, but he requires a semi-skilled caretaker to prepare his meals, bathe him, roll him on his side once during the night, and assist him with a bowel program and other physical needs.

The parties separated in 2015, and Husband filed a complaint for divorce six weeks later in July. Wife answered the complaint and counterclaimed, and in a temporary order, the trial court required the parties to keep detailed lists of all expenditures from their financial accounts so that they could determine the purpose of those expenditures and have the opportunity to argue their claims on the funds in their accounts. Husband moved for partial summary judgment, claiming that the purpose of the insurance proceeds was to compensate him for his total disability and, therefore, that they are not marital assets and are not subject to equitable division. Relying on *Dees v. Dees*, 259 Ga. 177 (377 SE2d 845) (1989), the trial court granted Husband's motion, ruling that the insurance proceeds must be deemed non-marital property because they compensated Husband solely for his pain and suffering, disability, and disfigurement, and not for lost wages, lost earning capacity, or medical and hospital expenses.[4] See id. at 177-178.

In *Dees*, this Court explained that, in many other equitable-distribution and community-property states, the characterization of workers' compensation

---

[4] The trial court also rejected Wife's argument that the deposit of Husband's insurance benefits into joint accounts converted the funds into marital property, but that issue is not raised in this appeal. See *Ehlers v. Upper West Side*, 292 Ga. 151, 154 (1), n. 6 (733 SE2d 723) (2012); *Trust Co. Bank v. Ga. Superior Court Clerks' Cooperative Auth.*, 265 Ga. 390, 391 (1), n. 1 (456 SE2d 571) (1995).

awards and personal injury awards as either marital or separate property must be determined by an "analytical approach." 259 Ga. at 177. We noted that we had applied that approach to personal injury awards in *Campbell v. Campbell*, 255 Ga. 461 (339 SE2d 591) (1986), and we adopted that approach for workers' compensation awards. See *Dees*, 259 Ga. at 178. Indeed, that approach became and remains the one which is followed by the majority of jurisdictions. See 2 Brett R. Turner, Equitable Distribution of Property §§ 6:55, 6:59 (3d ed., updated November 2016). Under the analytical approach,

> whether the award is marital property does not depend on a formalistic view which looks only to the timing of the acquisition of the award.[5] Instead, the inquiry focuses on the elements of damages the particular award was intended to remedy or, stated another way, the purpose of the award. States subscribing to this approach acknowledge that damage awards may be separated into three different components: (1) compensation for the injured spouse for pain and suffering, disability, and disfigurement, (2) compensation for the injured spouse for lost wages, lost earning capacity, and medical and hospital expenses, and (3) compensation for the uninjured spouse for loss of consortium. Compensation paid to a spouse for non-economic and strictly personal loss under (1) and (3) is considered that spouse's personal property, while the portion of damages paid to the injured spouse under (2) as

---

[5] This Court rejected the "mechanistic approach," "under which all property, including workers' compensation or personal-injury awards, acquired during marriage is deemed to be marital property unless it is specifically excepted by statute." *Dees*, 259 Ga. at 177 (punctuation omitted).

4

compensation for economic loss during the marriage is marital property.

*Dees*, 259 Ga. at 177-178 (citations and punctuation omitted).

Although Wife questions the trial court's reliance on *Dees*, she concedes that this Court should use the analytical approach to classify disability insurance proceeds. Indeed, "[p]roceeds from private disability . . . insurance policies are generally treated like personal injury and workers' compensation awards." 2 Turner, supra at § 6:90. See also Principles of the Law of Family Dissolution § 4.08 (2) (a) (2002) (American Law Institute treats insurance proceeds and personal injury recoveries in the same way when determining whether they are marital or separate property). Thus, the majority of courts have "focuse[d] on the nature and purpose of the specific disability benefits at issue" and applied such analytical approach "both to disability benefits paid in connection with insurance coverage maintained by the disabled spouse's employer and to disability benefits paid in connection with a private policy of disability insurance acquired with marital funds during the marriage." *Gragg v. Gragg*, 12 SW3d 412, 417 (Tenn. 2000) (citations omitted). See also Principles of the Law of Family Dissolution § 4.08 cmt. b (2002) ("Under Paragraph (2) (a), insurance proceeds are properly classified according to the nature of the

property they replace rather than by the source of the funds used to pay the insurance premium."); 2 Turner, supra at § 6:52 ("Privately-purchased and employer-provided disability insurance are identical benefits financed by slightly different means, and the same rules of classification should apply to both situations."), § 6:90 (analytical approach applies even if marital funds were used to pay the disability insurance premiums because benefits are paid only to those who both pay the premiums and suffer a personal injury, total proceeds are always vastly greater than the almost "de minimis" premium payments, and the marital estate has already received at least some return on its investment).

Husband heavily relies on *Dees*'s specific inclusion of the word "disability" in the component of compensation that must be considered the injured spouse's separate property under the analytical approach.[6] But, the application of the analytical approach to disability insurance proceeds is not that simple. *Dees* used the term "disability" in a narrow sense to refer, like "pain and suffering" and "disfigurement," to "non-economic and strictly personal loss." 259 Ga. at 178. Indeed, it quoted that language from *Weisfeld v. Weisfeld*, 513

---

[6] Similarly, the trial court itself, after deciding to use the analytical approach of *Dees*, stated that "[e]ven more substantial, however, is the fact that the award in this case fits squarely within prong one of the analytical approach as 'compensation for the injured spouse for pain and suffering, disability, and disfigurement.'"

S2d 1278, 1281 (I) (Fla. Dist. Ct. App. 1987), and the Supreme Court of Florida, in affirming that decision, explained that "the separate property of the injured spouse includes the *noneconomic* compensatory damages for pain, suffering, *disability*, and loss of ability to lead a normal life . . . ." *Weisfeld v. Weisfeld*, 545 S2d 1341, 1345 (Fla. 1989) (emphasis supplied). Insurance proceeds or benefits that are received on account of disability, however, generally compensate for a much broader variety of economic and non-economic losses. "[D]isability benefits have varied characteristics and purposes which make the task of classification problematic." *Gragg*, 12 SW3d at 416. Like personal injury awards, such benefits often have various component parts. *Hatcher v. Hatcher*, 933 P2d 1222, 1225-1226 (Ariz. App. 1996). Disability benefits

> may compensate for the loss of earnings resulting from compelled premature retirement and from a diminished ability to compete in the employment market. Disability benefits may also serve to compensate the disabled person for personal suffering caused by the disability. Finally, disability benefits may serve to replace a retirement pension by providing support for the disabled worker and his family after he leaves the job.

*Gragg*, 12 SW3d at 416 (citation omitted). When the relevant insurance policy or settlement does not allocate the compensation among these different purposes, it is for the trial court in the divorce case to make such an allocation.

7

See Principles of the Law of Family Dissolution § 4.08 (2) (a) (2002) ("The dissolution court may make a reasonable allocation of an undifferentiated award between its marital- and separate-property components."); 2 Turner, supra at § 6:55 (discussing allocation of personal injury awards). A prior failure "to anticipate the later [divorce] should not deprive the injured spouse of any claim on what is in principle his or her separate property." Principles of the Law of Family Dissolution § 4.08, reporter's note to cmt. c (2002).

We recognize that allocation of undifferentiated compensation generally is a question of fact that may not be susceptible to summary judgment. See 2 Turner, supra at § 6:55. Nevertheless, the grant of partial summary judgment to Husband is appropriate if he has shown that the disability insurance proceeds at issue are his separate property as a matter of law. "To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c)." *Lau's Corp. v. Haskins*, 261 Ga. 491, 491 (405 SE2d 474) (1991). Because summary judgment is a matter of law, we review the issue de novo, viewing the evidence in the light most favorable to the

8

nonmoving party. *Norfolk Southern R. Co. v. Zeagler*, 293 Ga. 582, 583 (1) (a) (748 SE2d 846) (2013). The dissent argues that the trial court, instead of this Court, should perform the function of original factfinder. We readily acknowledge that "[i]t is not the role of this Court . . . to sort through the evidence, resolve conflicts, and make findings of fact based on the evidence it finds credible." *Montgomery v. Barrow*, 286 Ga. 896, 898 (1) (692 SE2d 351) (2010). But the trial court also "is not a trier of fact on a motion for summary judgment." *Covington Square Assocs. v. Ingles Markets*, 287 Ga. 445, 448 (696 SE2d 649) (2010) (citation and punctuation omitted). Thus, "a trial court's order of summary judgment, including any findings of fact, 'enjoys no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met.'" *Godwin v. Mizpah Farms*, 330 Ga. App. 31, 35 (2) (766 SE2d 497) (2014) (punctuation omitted), quoting *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010). This standard of review "advances judicial economy by recognizing that, in summary judgment cases, the factual record is set and the appellate courts can, as well as the trial courts, apply the law to those facts." *Boyd v.*

9

*JohnGalt Holdings*, 294 Ga. 640, 644 (4) (755 SE2d 675) (2014) (citation and punctuation omitted).

The dissent also argues that the trial court "omitted part of the requisite legal analysis" and should have the first opportunity to apply the appropriate legal analysis to the relevant facts. (Dissent, p. 543.) Appellate courts, however, retain discretion to apply the "right for any reason" rule on de novo review and consider alternative legal theories or analysis not relied on by the trial court on summary judgment. See *City of Gainesville v. Dodd*, 275 Ga. 834, 838-839 (573 SE2d 369) (2002); id. at 839 (Sears, P. J., concurring specially); *Cook Pecan Co. v. McDaniel*, 337 Ga. App. 186, 192 (3) (b) (786 SE2d 852) (2016) (Peterson, J.) ("We may affirm the trial court's grant of summary judgment if it is right for any reason, whether stated or unstated, so long as the legal basis was fairly presented in the court below."), citing *Georgia-Pacific, LLC v. Fields*, 293 Ga. 499, 504 (748 SE2d 407) (2013). Such application of the "right for any reason" rule is appropriate at least where, as here, there are "few grounds advanced for summary judgment, with no disputes pertinent to the facts supporting those grounds." *Dodd*, 275 Ga. at 838 ("In such cases, the more efficient course would be for the appellate court to follow the 'right for any

10

reason' rule and consider grounds not addressed by the trial court, if it finds that the trial court's legal analysis is flawed."). In this case, Husband's motion for partial summary judgment involved only the proper application of the analytical approach to the allocation of his disability insurance proceeds, and this opinion simply applies the analytical approach, albeit with a fuller analysis than that used by the trial court. The evidence on summary judgment consists of just three items: the disability insurance policy itself, Wife's affidavit, and Husband's testimony at the temporary hearing. In this opinion, we rely on the terms of the policy and Wife's affidavit, both of which are wholly undisputed by Wife.[7] Moreover, the legal basis for this opinion was fairly litigated in the trial court, see *McDaniel*, 337 Ga. App. at 192 (3) (b), Wife has taken the opportunity to brief the relevant issues thoroughly in the trial court and on appeal, see *Dodd*, 275 Ga. at 839 (Sears, P. J., concurring specially), and this should be evident from our references throughout this opinion to many of her specific contentions.

---

[7] We do not rely on Husband's testimony, which is minimally relevant to the issue presented by the motion for partial summary judgment and, to the extent that it is relevant, does not raise a genuine issue of material fact when construed in the light most favorable to Wife as the nonmovant.

11

Wife contends that a majority of the disability insurance proceeds should be classified as retirement income, and she relies on the expectation that Husband would have retired at age 65 and on the averment in her affidavit that they "did not have any retirement accounts or investment plans." It is true that even unvested retirement benefits acquired during the marriage may be subject to division as marital property. See *Dees*, 259 Ga. at 178; *Courtney v. Courtney*, 256 Ga. 97, 99 (2) (344 SE2d 421) (1986). "Generally, [however], disability benefits replace income which is lost before retirement." *Gragg*, 12 SW3d at 418 (citation omitted). Disability benefits that are considered to include retirement benefits as a component normally result from employee benefit plans that require employees to waive all or part of their entitlement to retirement benefits in order to receive the disability benefits. See 2 Turner, supra at § 6:52.[8] The insurance policy in this case was privately purchased. It was not received through an employer, nor was it dependent on any waiver of retirement benefits. Unlike some disability plans, Husband's "accidental disability insurance benefits have no separate and distinct annuity or deferred

___

[8] In at least some states, no retirement component exists if the retirement benefits are unvested at the time of the disability. See *In re Marriage of Williamson*, 205 P3d 538, 542 (Colo. App. 2009); 2 Turner, supra at § 6:52, n. 5.

compensation benefit elements unrelated to the personal injury disability." *Fleitz v. Fleitz*, 606 NYS2d 825, 826 (N.Y. App. Div. 1994). "Instead, [Husband's] benefits [were] payable only for total physical disability." *Chance v. Chance*, 694 S2d 613, 618 (La. Ct. App. 1997), overruled on other grounds in *Mason v. Mason*, 927 S2d 1235, 1241 (La. Ct. App. 2006). For this reason, Husband's disability insurance policy was simply not an appropriate vehicle to provide for retirement, and, therefore, Wife's reliance on the absence of any other retirement accounts or investment plans is misplaced. Likewise, the mere fact that 65 is the normal age of retirement for workers in the United States is not evidence that Husband intended not to rely only on Social Security benefits but to provide for his retirement through some additional, unsuitable method. See *Gibbons v. Gibbons*, 10 S3d 127, 132 (I) (D) (Fla. App. 2009). Accordingly, we must conclude that Husband's disability insurance proceeds did not have a retirement component, and we turn now to consider the nature and purpose of his non-retirement disability benefits.

"In all states accepting the analogy between disability benefits and personal injury awards, the disability component is traceable only to the injury itself, not to any period of prior employment or to any marital funds used to pay

13

the premiums." 2 Turner, supra at § 6:52 (footnote omitted). Furthermore, in a state like Georgia that has chosen a mixed classification of personal injury awards, disability benefits that do not include retirement benefits "must be divided into two portions:  that given as compensation for lost marital wages and the portion given as compensation for lost postmarital wages or personal pain and suffering.  The former portion is marital property, but the latter portion is separate property." Id. (footnotes omitted).  Consistent with this framework, Wife does not claim that any of Husband's disability insurance proceeds were for the purpose of reimbursing medical expenses.[9]  Indeed, the policy specifically disclaims any "basic hospital, basic medical, or major medical coverage," and the payment of $1,500,000 was the maximum amount of the "Accidental Permanent Total Disability" benefit, an amount unrelated to the separate, much smaller "Emergency Accident and Sickness Medical Expense" benefit.[10]  Wife does argue, however, that the disability insurance proceeds included compensation for loss of consortium.  But, she has not directed our

_____

[9] Wife also does not claim that any such expenses were paid out of marital funds during the marriage, as would be necessary in order to classify compensation for medical expenses as marital property.  See 2 Turner, supra at § 6:55, nn. 14, 15.

[10] The maximum annual "Emergency Accident and Sickness Medical Expense" benefit for an individual was $500.

14

attention to any authority that non-retirement disability benefits ever extend beyond lost wages and pain and suffering to include loss of consortium. In any event, the purpose of Husband's disability insurance policy was not to compensate his spouse for loss of consortium. Husband was the sole insured person under the policy, its definition of "injury" did not include any non-bodily injury to someone other than the insured person, see note 2, supra, and the only person other than Husband who could receive benefit payments was his beneficiary after his death.

Wife correctly contends that Husband's disability insurance proceeds included lost wages and lost earning capacity. "The primary intent of a disability policy is to insure against the risk of loss of the insured's future earning capacity." *Hatcher*, 933 P2d at 1226 (citation omitted).

> [D]isability benefits do not substitute for savings but instead protect against the inability of an individual to earn the salary or wages to which he or she was accustomed in the immediate past. . . . Logic dictates that disability benefits and income should be treated in the same manner since disability benefits are income replacement.

*Gragg*, 12 SW3d at 418 (citation and punctuation omitted). The classification of compensation for lost wages, whether that compensation is in the form of a personal injury award or disability insurance proceeds, "depends upon when the

15

wages would have been received. If the wages would have been received after the marriage, the compensation is separate property. . . . Conversely, compensation for lost wages is marital property to the extent that the wages would have been received during the marriage." 2 Turner, supra at § 6:55 (footnotes omitted).

> A personal injury claim [or disability] settlement, to the extent that it represents compensation for pain and suffering and loss of capacity is peculiarly personal to the party who receives it. For the other party to benefit from the misfortune of the injured party would be unfair. However, to the extent that the settlement amount represents compensation for medical expenses or lost wages during the marriage, the settlement may be considered an asset of the marriage.

*Campbell*, 255 Ga. at 462. See also Principles of the Law of Family Dissolution § 4.08 (2) (a) (2002) ("Insurance proceeds and personal-injury recoveries are marital property to the extent that entitlement to them arises from the loss of a marital asset, including income that the beneficiary-spouse would have earned during the marriage."). We acknowledge that it will not always be easy for a trial court to take a lump-sum payment, as in this case, and "parse it according to what it might represent." See *Campbell*, 255 Ga. at 463 (Weltner, J., dissenting). "On the other hand, one could often make a reasonable surmise . . . of at least the likely value of certain damage elements — lost wages, out-of-

pocket expenses — which could then be subtracted from the total award to provide a value for the remainder, such as pain and suffering." Principles of the Law of Family Dissolution § 4.08, reporter's note to cmt. c (2002).

In this case, "[b]ecause [H]usband received a lump[-]sum disability policy settlement for a disability that extended through the remainder of marriage and beyond, at least part of the insurance proceeds compensated the [marital estate] for [H]usband's reduced earning capacity during marriage." *Hatcher*, 933 P2d at 1226. In her affidavit, Wife states that, "[f]or the previous few years prior to his injury, [Husband]'s reported taxable income was consistently less than $35,000.00." Thus, assuming that one purpose of the disability insurance proceeds was to compensate the marital estate for all lost wages attributable to Husband's disability during the remaining years of the marriage, the evidence is undisputed that such compensation would have amounted to something less than $200,000. Yet Wife also states that, "[d]ue to [Husband]'s spending habits, only approximately $860,000 of the disability benefits remains." She therefore concedes that $640,000 of Husband's disability insurance proceeds was consumed during the marriage. As a result, it is without dispute that the lump-sum payment during the marriage more than compensated the marital estate for

its losses during the marriage. See *Blydenburg-Dixon v. Dixon*, 277 SW3d 815, 820 (Mo. App. 2009). And the trial court "obviously cannot divide between the parties that portion of [an] . . . award or settlement which was spent before the divorce. The portion may have been marital property at one time, but it is no longer owned by the parties." 2 Turner, supra at § 6:58 (footnote omitted). Moreover, Wife does not claim that some portion of the $640,000 should be awarded to her as a result of any dissipation. Cf. 2 Turner, supra at § 6:58 ("spent proceeds can be divided if they were spent in a manner which constitutes dissipation of marital property" (footnote omitted)); see generally id. at § 6:105. Instead, she claims only that the $860,000 of remaining funds should be characterized as marital assets subject to equitable division. As has been demonstrated, however, none of those remaining funds represent any compensation for lost wages during the marriage, and all of the remaining funds must be attributed to Husband's expected post-marital wages and his pain and suffering. Because the remaining amounts of the permanent total disability benefits paid to Husband under his disability insurance policy serve as compensation for his post-marital lost wages and his pain and suffering, based on our de novo review of the evidence viewed in favor of Wife, the remaining

18

benefits are his separate, non-marital property as a matter of law. It follows that the trial court, even if it did not evaluate the case as we have, did not err in granting partial summary judgment on this issue to Husband, and we affirm under the "right for any reason" doctrine. See *Dodd*, 275 Ga. at 838-839; id. at 839 (Sears, P. J., concurring specially).

Judgment affirmed. All the Justices concur, except Melton, P. J., and Hunstein, J., who dissent.

MELTON, Presiding Justice, dissenting.

Although I agree with the majority opinion's conclusion that the "analytical approach" applies to this case, I disagree with its decision to affirm summary judgment by employing law not recognized by the trial court to facts

that the trial court did not consider. Under these circumstances, I believe that the trial court's order must, at the very least, be reversed and vacated, and the case should be remanded to allow the trial court to consider the facts relevant to the appropriate legal analysis for the first time. Accordingly, I respectfully dissent.

The law regarding the "anaytical approach" to determine whether a disability award is marital or non-marital property is fairly defined. Compensation, including disability awards, paid to the injured spouse for lost wages, lost earning capacity, and medical and hospital expenses as compensation for economic loss during the marriage is marital property. See Dees v. Dees, 259 Ga. 177, 178 (377 SE2d 845) (1989). Retirement benefits, including benefits that have not yet vested, are comparable to the element of compensation for lost wages, lost earning capacity, and medical and hospital expenses, which has been held to be marital property under the "analytical approach." Any part of a disability payment that does not represent retirement proceeds "must be divided into two portions: that given as compensation for lost marital wages and the portion given as compensation for lost postmarital wages or personal pain and suffering. The former portion is marital property, but the latter portion is separate property." 2 Brett R. Turner, Equitable Distribution of Property  § 6:52 (3d ed.). Division and classification of portions is a difficult,

fact-intensive analysis best left to finders of fact. As the majority correctly states, when the relevant insurance policy or settlement does not allocate the compensation among loss of earnings, personal injury, and retirement (like the policy in the present case), it is for the factfinder in the divorce case to make such an allocation, and allocation of undifferentiated compensation generally is a question of fact not susceptible to summary judgment.

Based on this law, the majority concludes that, "[b]ecause [H]usband received a lump[-]sum disability policy [payment] for a disability that extended through the remainder of marriage and beyond, at least part of the insurance proceeds compensated the [marital estate] for [H]usband's reduced earning capacity during marriage." Hatcher v. Hatcher, 933 P2d 1222, 1226 (Ariz. App. 1996). In shorthand, at least some part of the disability payment in this case was marital property. An analysis of the trial court's order indicates that it failed to apply this law at all to its ruling in the case. Instead, although the trial court claimed to be applying the analytical method, it based its decision on two determinations, finding: (1) "the 1.5 million dollars was paid to plaintiff solely to remedy his injury and sustain him for the remainder of his life[— a finding reinforced] by the fact that nothing in the policy indicates that it was tied to [Husband's] lost wages or earning capacity"; and (2) the fact that the insurance

2

proceeds were placed into a joint account did not make them marital property because "the [trial] court doubts" that Husband would have done so if he knew that Wife was going to leave him three years later. Again, in shorthand, the trial court determined that *no part* of the disability payment was marital property.

So, the majority opinion tacitly disagrees with the trial court's legal analysis. For this reason alone, the trial court's order should, at the very least, be vacated and the case remanded for consideration in light of the appropriate legal analysis. Instead, the majority goes on to apply a legal analysis never employed by the trial court to facts the trial court never considered in its own ruling. Because the majority opinion finds that at least some component of the disability payment was marital property in the form of lost wages, it takes on the task of becoming the *original* factfinder to determine what amount those lost wages might be. This is a function that should be performed by the trial court. Because it omitted part of the requisite legal analysis, the trial court, itself, has yet to consider the valuation of the marital component of the disability payment.

Whereas the majority recognizes that, as an initial matter, some component of the disability payment was marital property in the form of lost wages, the trial court never recognized this presumption and concluded the opposite. The majority, nonetheless, continues its analysis by playing the role

3

of initial factfinder and rebuts the presumption it raises by determining that all payments "serve as compensation for [Husband's] post-marital lost wages and his pain and suffering"— non-marital property as a matter of law. (Maj. op. at 541.) The majority does so after recognizing the difficulty associated with allocation in this context but disregarding any allegations of fact. The majority, in short, takes its analysis one large step too far.

This case should be remanded in order to give the trial court its first opportunity to properly consider both the appropriate legal analysis and the facts that are relevant to that analysis.

I am authorized to state that Justice Hunstein joins in this dissent.


Decided June 19, 2017.

Domestic relations. Newton Superior Court. Before Judge Ott.

Waldrop & Bootcheck, Michael S. Waldrop, for appellant.

Coxen & Worthington, Stephen L. Coxen, for appellee.