A09A1866. HARRELL v. GEORGIA DEPARTMENT OF HUMAN RESOURCES.

(685 SE2d 441)

BLACKBURN, Presiding Judge.

The Georgia Department of Human Resources ("DHR") brought this action against Jarrod Harrell, on behalf of Harrell's son, to confirm paternity and to enforce payment of child support. Following trial, the trial court found that Harrell was the child's father and ordered Harrell to pay $1,639 per month in child support. Harrell appeals, arguing that the court erred in calculating his gross income and in sanctioning him for a discovery violation without affording him an opportunity to be heard on the issue. Because we agree that Harrell was not afforded a hearing prior to the imposition of discovery sanctions and because those sanctions were unduly severe, we reverse and remand this matter to the trial court.

The record shows that Harrell's child was born on April 15, 2002. Harrell and the child's mother were never married; however, since the child's birth, the mother has had custody, and Harrell, who apparently has not contested paternity, has paid her $400 per month in child support. In December 2007, the child's mother learned that Harrell had been part owner of a small construction and remodeling company since 2005, which went by the name Exousia Development & Construction, Inc. ("Exousia"). Although the record is not clear as to whether Exousia was initially created as a partnership or a limited liability company, by 2007, it was operating as a Subchapter S corporation, with Harrell as a one percent shareholder. Regardless, based on Harrell's involvement with Exousia, the child's mother believed that Harrell was receiving income in addition to that which

he received from his salary as a police officer. Consequently, she filed an application for child support enforcement with DHR, which resulted in DHR filing a complaint for recovery of child support against Harrell.[1] At the same time that it filed the complaint, DHR served Harrell with requests for admission of facts and a notice to produce, requesting information regarding his personal finances and medical insurance. DHR did not serve Exousia with any discovery requests.

On February 28, 2008, the case was continued so that the results of genetic testing could be obtained. It is unclear from the record why DHR sought to impose the additional burden and expense of conducting genetic testing, especially in light of the fact that Harrell had already been voluntarily providing child support and does not appear, based on the record, to have contested paternity. In fact, the request for admission of facts served on Harrell sought an admission that he was the natural parent of the child. Although neither Harrell's answer to the complaint nor his responses to DHR's discovery requests are included in the record, it does not appear that Harrell denied paternity at any point. Nevertheless, on that same date, Harrell and DHR entered into a consent order regarding genetic testing to determine paternity. On March 20, 2008, the case was continued again because the results of the genetic testing still had not been obtained. Ultimately, the genetic testing results indicated a 99.99 percent probability of Harrell's paternity.

With paternity conclusively established, a hearing on the case was scheduled for April 30, 2008. However, at that hearing, the trial court continued the matter until May 28, 2008, and ordered Harrell to provide DHR with information regarding his business's finances despite the fact that no motion to compel had been filed by DHR or served on Harrell and despite the fact that no discovery requests had ever been served on Exousia. Specifically, the court's May 1, 2008 continuance order directed Harrell

> to provide business and personal bank account statements for 2005, 2006, 2007, complete personal and business tax returns for 2005, 2006, 2007, breakdown of all business expenses, contracts, income, proof of partnership, proof of tax extension for 2007, [and] proof of medical insurance.

The order also specifically directed Harrell "to provide all requested

---

[1] Under OCGA §§ 19-11-6 (c) and 19-11-8 (b), DHR is required to "accept applications for child support enforcement services from parents of minor children not receiving public assistance." (Punctuation omitted.) *Dept. of Human Resources v. Allison*, 276 Ga. 175, 176 (575 SE2d 876) (2003).

documents by the 15th of May, 2008."

At the hearing on May 28, 2008, the DHR agent handling the case testified that based on documents provided by Harrell she had verified that Harrell earned a salary of approximately $52,436 per year, or $4,369 per month, as a police officer. Harrell did not dispute this testimony. However, the DHR agent further testified that Harrell had not provided DHR with any information regarding Exousia's finances other than the company's tax returns for 2005 and 2006, and that attorneys for Exousia had informed DHR that the business would not be providing any financial information based upon the requests served on Harrell.[2] Specifically, she testified that Harrell had not provided any information regarding the company's expenses despite the fact the company was solely owned and operated by Harrell and his current girlfriend. The agent also testified that based upon her review of the documents provided by Harrell, Harrell and his girlfriend converted the company, which allegedly was initially formed as a limited liability company in 2005, to a Subchapter S corporation in 2007. When the court interjected that Harrell was ordered to produce the documents by May 15, 2008, Harrell's counsel tried to respond that he did not represent the corporation, but was interrupted by the court, which stated that in light of Harrell's failure to produce the requested documents, it would draw an inference harmful to Harrell's contentions.

The two tax returns for Exousia that were provided by Harrell were admitted into evidence, and the DHR agent testified that a review of those documents indicated that Exousia had gross revenues of $97,688 in 2005 and $159,837 in 2006. Thus, the DHR agent had calculated Harrell's income from self-employment to be $13,319 per month, which added to his police salary equaled a gross income of $17,689 per month. Based on this figure and the statutory child support guidelines,[3] the DHR agent testified that Harrell's child support obligation should be set at $1,639 per month.

On cross-examination, the DHR agent acknowledged that she had considered the gross revenue indicated in the 2005 and 2006 tax returns for Exousia to calculate Harrell's income but had not considered the business expense deductions indicated in those very same documents. The trial court allowed Harrell to introduce a document that indicated that he only owned one percent of the shares of Exousia and that his girlfriend owned 99 percent. However,

---

[2] The DHR agent also noted that she had received a letter from Harrell's accountant, which indicated that Harrell had filed for an extension to file his 2007 personal and company tax returns. During Harrell's testimony, he confirmed that he had filed for an extension for his 2007 returns.

[3] See generally OCGA § 19-6-15 (o).

because of Harrell's failure to provide the requested discovery, the court did not allow Harrell or his girlfriend to testify regarding Exousia's expenses and deductions. At the trial's conclusion, the court granted DHR's request and set Harrell's child support obligation at $1,639 per month, stating that the award was appropriate in light of Harrell's failure to provide DHR with complete responses to its discovery requests.

Subsequently, Harrell filed a motion for new trial. After hearing Harrell's motion, the trial court denied it and again noted that Harrell's failure to comply with the discovery request and the court's May 1, 2008 continuance order factored into its decision. Thereafter, Harrell filed an application for a discretionary appeal pursuant to OCGA § 5-6-35 (a) (2), which this Court granted.

1. Harrell contends that the trial court erred in sanctioning him for a discovery violation without affording him prior notice and an opportunity to be heard on the issue. We agree.

"If a party does not comply with a discovery order, the trial court may impose sanctions under OCGA § 9-11-37 (b) (2), including dismissal of the complaint." *Amaechi v. Somsino*.[4] See *Motani v. Wallace Enterprises*.[5] Addressing this issue, the Supreme Court of Georgia has held that

> in essence, what the law contemplates under OCGA § 9-11-37 is a two-step proceeding before the ultimate sanction of dismissal or default judgment may be imposed. First, a motion to compel must be filed and granted; second, after the party seeking sanctions notifies the court and the obstinate party of the latter's failure to comply with the order granting the motion to compel and of the moving party's desire for the imposition of sanctions, the trial court may apply sanctions after giving the obstinate party an opportunity to be heard and determining that the obstinate party's failure to obey was willful.

(Punctuation omitted.) *McConnell v. Wright*.[6] See *Tenet Healthcare Corp. v. Louisiana Forum Corp.*[7] Only in exceptional cases, "where the trial court can otherwise determine wilfulness on the part of the party against whom the sanctions are sought," is a hearing not absolutely necessary. *McConnell*, supra, 281 Ga. at 870. See

---

[4] *Amaechi v. Somsino*, 259 Ga. App. 346, 347 (577 SE2d 48) (2003).

[5] *Motani v. Wallace Enterprises*, 251 Ga. App. 384, 385 (1) (554 SE2d 539) (2001).

[6] *McConnell v. Wright*, 281 Ga. 868, 869 (644 SE2d 111) (2007).

[7] *Tenet Healthcare Corp. v. Louisiana Forum Corp.*, 273 Ga. 206, 211 (3) (538 SE2d 441) (2000).

*Schrembs v. Atlanta Classic Cars.*[8] "Trial judges have broad discretion in controlling discovery, including imposition of sanctions, and appellate courts will not reverse a trial court's decision on such matters unless there has been a clear abuse of discretion." (Punctuation omitted.) *Amaechi,* supra, 259 Ga. App. at 347. See *Motani,* supra, 251 Ga. App. at 385 (1).

Here, although DHR did not file a motion to compel and never served Exousia with discovery requests, the trial court's May 1, 2008 continuance order clearly directed Harrell to provide DHR with Exousia's financial information. In addition, a review of the record indicates that DHR did not move for sanctions after Harrell failed to substantially comply with the court's order. Rather, it appears that DHR first noted this failure during the May 28, 2008 trial. Nevertheless, the trial court sanctioned Harrell without providing him an opportunity to be heard. In two separate instances, the trial court precluded testimony regarding the business's expenses and profits. Additionally, at several points during trial, including when it issued its final judgment on child support, the court explicitly stated that it would draw an inference harmful to Harrell's position because he failed to comply with the court's continuance order.

By sanctioning Harrell for his discovery violation in this manner, the trial court abused its discretion. "A court cannot assume that a failure to comply with its order is unjustifiable. It must examine the circumstances retrospectively. This means affording the noncomplying party an opportunity to explain the circumstances following the failure." (Punctuation omitted.) *Cole v. Hill.*[9] See *McConnell,* supra, 281 Ga. at 870. While it is undisputed that a hearing must be held before a trial court may impose harsh sanctions such as dismissing an answer and entering a default judgment, see *Tenet Healthcare Corp.,* supra, 273 Ga. at 211 (3), our Supreme Court has noted that "[a] finding of wilfullness might also be required when other sanctions, such as excluding critical evidence under OCGA § 9-11-37 (b) (2) (B), are imposed." *American Med. Security Group v. Parker.*[10] Cf. *Ford Motor Co. v. Gibson*[11] (holding that the trial court did not abuse its discretion in holding a hearing before sanctioning defendant by precluding it from contesting certain issues given the fact that court could have imposed default). Here, the trial court's decision to ignore the deductions indicated in Harrell's business's tax returns and to preclude him from discussing any other business

---

[8] *Schrembs v. Atlanta Classic Cars,* 261 Ga. 182, 182-183 (402 SE2d 723) (1991).

[9] *Cole v. Hill,* 286 Ga. App. 535, 538 (2) (649 SE2d 633) (2007).

[10] *American Med. Security Group v. Parker,* 284 Ga. 102, 107 (8), n. 22 (663 SE2d 697) (2008).

[11] *Ford Motor Co. v. Gibson,* 283 Ga. 398, 402 (2) (659 SE2d 346) (2008).

expenses effectively led to a finding that increased Harrell's gross income by over $150,000. The effect of such sanctions was therefore nearly, if not equally, as drastic as entering a default judgment against him would have been. Thus, we hold that providing the noncomplying party with an opportunity to be heard is required even when imposing sanctions that are slightly less drastic than default judgment, such as excluding critical evidence or precluding a party from making certain arguments that are critical to the party's case as the court did here. See id.

Furthermore, "we cannot say that the record contains enough evidence of [Harrell's] willful behavior that any hearing on the issue would simply be duplicative." (Punctuation omitted.) *Cole*, supra, 286 Ga. App. at 538 (2). See *McConnell*, supra, 281 Ga. at 870. Accordingly, we reverse the judgment of the trial court and remand this case so that Harrell can be afforded an opportunity to explain the circumstances surrounding his failure to fully comply with the trial court's continuance order. Moreover, remand will afford DHR an opportunity, should it choose to do so, to serve discovery requests directly upon Exousia in order to obtain a clearer picture as to the form of legal entity under which the business was created and under which it currently operates, as well as to obtain more accurate information regarding its revenues and expenses and division of ownership. In addition, remand will afford the opportunity for Harrell's 2007 returns to be reviewed. Assuming, as Harrell claims, that Exousia is currently operating as a Subchapter S corporation, a review of Harrell's 2007 returns would also provide a glimpse of Exousia's revenues for that year in light of the fact that such a "corporation's profits pass through directly to its shareholders on a pro rata basis and are reported on the shareholders' individual tax returns." *Gitlitz v. Commr. of Internal Revenue*.[12] See I.R.C. § 1366 (a) (1) (A).

2. Harrell also contends that the trial court erred in calculating his gross income by considering the gross revenue indicated in his business's tax returns while ignoring the business expenses and other deductions indicated in those very same documents and also ignoring the fact that another document indicated that in 2007, he only owned one percent of the shares of Exousia. We agree.

"The amended provisions of OCGA § 19-6-15, just as their predecessor child support guidelines, are mandatory and must be considered by a trier of fact setting the amount of child support."

---

[12] *Gitlitz v. Commr. of Internal Revenue*, 531 U. S. 206, 209 (I) (121 SC 701, 148 LE2d 613) (2001).

(Punctuation omitted.) *Evans v. Evans.*[13] See *Swanson v. Swanson.*[14] As amended, OCGA § 19-6-15 (f) (1) (B) in part provides:

> Income from self-employment, rent, royalties, proprietorship of a business, or joint ownership of a partnership, limited liability company, or closely held corporation is defined as gross receipts minus ordinary and reasonable expenses required for self-employment or business operations.

Here, the trial court reviewed the tax returns for Harrell's business to calculate Harrell's self-employment gross income but completely ignored the deductions and expenses indicated on those same returns. In addition, the trial court also ignored evidence that Harrell currently only owned one percent of the shares of the company. The court reasoned that ignoring this evidence was a justifiable sanction to impose upon Harrell for his failure to provide discovery. However, we conclude that such a sanction contravenes the Supreme Court of Georgia's finding that the child support guidelines in OCGA § 19-6-15 are mandatory. See *Evans*, supra, 285 Ga. at 319. Indeed, even a defendant judged to be in default is allowed to contest the amount of damages alleged. See *McCorvey Grading &c. v. Blalock Oil Co.*[15] ("a defendant in default is in the position of having admitted each and every material allegation of plaintiff's petition except as to the amount of damages alleged") (punctuation omitted); OCGA § 9-11-55 (a). Accordingly, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.

*Judgment reversed and case remanded. Adams and Doyle, JJ., concur.*

DECIDED OCTOBER 15, 2009.

*Thurbert E. Baker,* Attorney General, *Mark J. Cicero,* Assistant Attorney General, *Carol L. Lawing,* for appellee.

---

[13] *Evans v. Evans,* 285 Ga. 319 (676 SE2d 180) (2009).

[14] *Swanson v. Swanson,* 276 Ga. 566, 567 (1) (580 SE2d 526) (2003).

[15] *McCorvey Grading &c. v. Blalock Oil Co.,* 268 Ga. App. 795, 796 (602 SE2d 842) (2004).