## A09A2200. BANKS v. ECHOLS et al.
(691 SE2d 667)

BERNES, Judge.

In this foreclosure action, Eunice Banks ("Banks") appeals from the trial court's grant of summary judgment to the estate of Ed P. Echols by and through its executors, N. G. Echols and N. P. Echols (collectively, "Echols"). The trial court's order granting summary judgment in favor of Echols was based upon Echols having obtained a default judgment against Jimmy Banks, Banks's former husband[1] who previously owned the property. Because we conclude that the trial court erred in concluding that Banks was bound by the default judgment obtained against her ex-husband, and because the record establishes that questions of fact remain as to whether the foreclosure was otherwise proper, we reverse.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. We review de novo a trial court's grant of summary judgment.

(Citation omitted.) *Steed v. Fed. Nat. Mtg. Corp.*, 301 Ga. App. 801, (689 SE2d 843) (2009).

So construed, the record shows that on June 10, 1980, Ed Echols conveyed real property, including a home, via warranty deed to Jimmy Banks for a purchase price of $17,500. Because Ed Echols agreed to finance a portion of the purchase price, Jimmy Banks executed a deed to secure debt in favor of Ed Echols in the principal amount of $16,000 (the "Security Deed"). The Security Deed provided that it would mature on June 14, 2000, and that it would accrue interest at a rate of 11% per annum.

Banks was married to Jimmy Banks from 1978 through 1998, at which time they separated. Following their separation, Jimmy Banks conveyed the subject property to Banks via a quitclaim deed. Banks took over the payments on the Security Deed at that time. Prior to 1997, the payments were submitted to Ed Echols, but following Ed's

---

[1] Although it is unclear whether Banks and Jimmy Banks are technically divorced, the record is unrefuted that they have been separated since 1998. For the ease of this opinion, we will refer to him as her former or ex-husband nonetheless.

death they were submitted to Ted Echols.

In November 1998, Banks wrote Ted Echols in order to request a payoff amount on the Security Deed. In his response to Banks's request, Ted stated that the Echols's records did not reflect any payments made on the debt from 1986 through 1996, and that "it [would] be helpful for [Banks] to review [her] records and provide to [Echols] proof of payments for these years." In the correspondence that followed, Banks claimed that payments had in fact been consistently made during the time period in question and produced documentary evidence in support of her position.[2] Nonetheless, Ted Echols maintained that over $16,000 was owed on the debt, but that he would accept a complete payoff of $16,000 in exchange for a mutual release of all claims associated with the Security Deed.

Banks continued to make monthly payments on the Security Deed and, in a letter dated June 30, 2000, sent Echols a money order indicating that it represented what she believed to be the "last and final" payment on the debt. Nearly a year later, on March 12, 2001, Echols sent Banks a letter rejecting and returning the payment, informing her that a balance of $17,298.06 remained on the Security Deed, and notifying her that he "intend[ed] to rely on the exact terms of the" Security Deed, and would pursue all remedies, including foreclosure, if she failed to pay the balance within 30 days.

The record contains no further correspondence between the parties until six years later when, on June 8, 2007, Echols filed the instant lawsuit against both Jimmy and Eunice Banks, alleging that the debt was now past due in the amount of $28,173.33. The complaint sought a declaratory judgment that Echols was entitled to payment and/or possession of the property and petitioned to foreclose on the property. It further alleged that Echols was entitled to the placement of a special lien against the property, damages for unjust enrichment, and payment of attorney fees, court costs, and litigation expenses pursuant to both OCGA §§ 9-15-14 and 13-1-11 (a).

Banks filed a verified answer, pro se, in which she denied the substantive allegations in Echols's complaint and asserted that the Security Deed had been paid in full.[3] She included in her answer a counterclaim in which she "affirmatively aver[red] that the [Security Deed had] been paid off and demand[ed] strict proof of [Echols's] claims," and contended that she was entitled to damages for injuries

---

[2] Banks has maintained that, although she produced evidence of a significant number of payments, she did not have a complete record of every payment made during the relevant time period.

[3] Banks has asserted a statute of limitation defense; however, because the Security Deed was signed under seal, the applicable statute of limitation is 20 years. See OCGA § 9-3-23.

suffered by Echols's attempts to collect a debt not owed. Finally, Banks asserted that she was entitled to a declaratory judgment that the debt had been paid and Echols was not entitled to encumber the property.

When Echols was unable to locate Jimmy Banks in order to perfect service upon him, he filed a motion for service of publication, which was granted by the trial court.[4] Jimmy Banks failed to answer the complaint and Echols moved for a default judgment against him. The trial court granted Echols's motion and, in its order, awarded Echols judgment by default in the amount of $28,173.33 on the Security Deed and an additional $2,817.33 for attorney fees, granted a special lien to be placed on the property, and granted Echols's petition to foreclose on the property.

Using the default judgment against Jimmy Banks, Echols moved for summary judgment, arguing that the default entitled him to judgment against Banks. In a supporting affidavit, Echols averred that a judgment on the merits had been entered against Jimmy Banks, for the amounts owed by him pursuant to the Security Deed; that neither Banks nor Jimmy Banks had fully repaid Echols; and that the judgment against Jimmy Banks was correct in the amount stated.

In opposition to Echols's motion, Banks presented receipts, cancelled checks, and money orders reflecting payments on the Security Deed spanning from 1980 through June 2000. The documents evidenced payments totaling at least over $28,800 during that time. She also produced a letter, purportedly written and signed by Ed Echols on February 7, 1994, in which Ed Echols purportedly stated that the loan payoff at that time was $8,236.44. Banks further disputed Echols's statement of undisputed material facts in that she continued to claim that the debt had been paid in full.[5]

---

[4] In the affidavit filed with the motion, Echols contended that Banks knew and was intentionally concealing the whereabouts of Jimmy Banks. This allegation was purportedly based upon Banks's response to an interrogatory request in which she identified Jimmy Banks as a person "who aided in writing, gathering, organizing, or otherwise preparing" her *discovery responses.* In a supplemental interrogatory response, however, Banks explained that she misread the question so as to request the names of people "who aided in writing, gathering, organizing, or otherwise preparing" her *payments on the Security Deed,* and thus she included Jimmy Banks in her response. She noted that she had also included the name of her late mother, Louise Anderson, who had died in 2001.

[5] The record further shows that Banks served Echols with requests to produce documents, seeking generally documentary evidence supporting Echols's position on the alleged outstanding balance and showing payments that Echols alleged to have been unsatisfied. In his response, Echols objected on the ground that the requests called for matters involving attorney-client privilege, the work product doctrine, legal conclusions, and that they sought to impose duties not required under the Civil Practice Act and were overly broad, but nonetheless indicated that he would produce relevant documentation subject to the objections. We cannot discern from the record what, if anything, Echols produced to Banks, but when Banks claimed

Without holding a hearing, the trial court granted summary judgment in favor of Echols. In its order, the court recognized that it was undisputed that Banks was entitled to possession of the subject property by virtue of the quitclaim deed from Jimmy Banks. The trial court went on to authorize the foreclosure because there existed "no genuine issues of material fact regarding whether the Security Deed ha[d] been paid in full by . . . Jimmy Banks" due to the default judgment against him. It is from this order that Banks appeals.

1. Banks argues that the trial court erred in granting summary judgment in favor of Echols without properly considering the evidence so as to make a determination as to whether the foreclosure was proper. We agree.

(a) As an initial matter, we note that, at the time Jimmy Banks purchased the subject property and executed the Security Deed in favor of Ed Echols, Ed Echols retained legal title to the property, and Jimmy Banks was vested with an equitable title. See *Manders v. King*, 284 Ga. 338, 341 (667 SE2d 59) (2008); *Tomkus v. Parker*, 236 Ga. 478 (1) (224 SE2d 353) (1976). Jimmy Banks was free to dispose of his equitable title — which included the right to redeem full legal title of the property upon final payment of the underlying debt — in the same manner as a full legal title.[6] *Manders*, 284 Ga. at 341. Echols, however, retained the right to foreclose on the property in the event that the Security Deed went into default.[7] Id.; *Tomkus*, 236 Ga. at 478 (1).

It does not follow, however, that Echols, as executor to Ed Echols, was entitled to rely on the default judgment against Jimmy Banks in order to obtain a judgment authorizing foreclosure against Banks. Banks denied the allegations of the complaint from its inception and raised affirmative defenses to Echols's claims. As co-defendants in an action involving entitlement to real property based on a common deed, Banks should have been afforded the opportunity to prove her position independently of Jimmy Banks's default. See *Lord v. Holland*, 282 Ga. 890, 892-894 (2) (655 SE2d 602) (2008). See also *Simmons v. Community Renewal &c.*, 286 Ga. 6, 8 (2) (685 SE2d 75) (2009); *Anthony v. Larios*, 256 Ga. App. 248,

---

that she had not received the documents requested and moved to compel production of the same, Echols successfully obtained a judgment against her for $735 in attorney fees for a frivolous motion.

[6] By its terms, the Security Deed did not place any restrictions on Banks's ability to transfer his interest in the property to third parties.

[7] The record does not indicate that Banks expressly assumed payment of the secured indebtedness, as opposed to merely taking the property subject to the debt. In the absence of an express assumption, Banks would not be personally liable for the debt, despite the fact that the property remains subject to foreclosure. See *Tomkus*, 236 Ga. at 478 (1); *Alsobrook v. Taylor*, 181 Ga. 10 (181 SE 182) (1935).

248 (568 SE2d 135) (2002); *Johnson v. Ga. Fertilizer & Oil Co.*, 21 Ga. App. 530 (94 SE 850) (1918). Thus, to the extent that the trial court's order authorizing foreclosure was based upon the liability admitted by way of Jimmy Banks's default, it was erroneous.

(b) Banks further argues that the parties' course of conduct over the span of years effected a quasi new contract such that Echols could not insist on strictly enforcing the original terms without first giving her reasonable notice. We agree that a jury question on the issue has been presented.

> Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice.

OCGA § 13-4-4. See *Southern Life Ins. Co. of Ga. v. Citizens Bank of Nashville*, 91 Ga. App. 534, 538 (86 SE2d 370) (1955) ("[W]here, by a course of conduct, one leads another to believe that he will not insist upon the strict terms of the contract, he will not be heard to complain because the other contracting party relies upon his acquiescence as evidenced by a course of conduct in similar situations."); *Allstate Ins. Co. v. Ackley*, 227 Ga. App. 104, 106 (2) (488 SE2d 85) (1997). Evidence of a debtor's repeated late, irregular payments, which are accepted by the seller, creates a factual dispute as to whether a quasi new agreement was created under OCGA § 13-4-4. See *Smith v. Gen. Finance Corp. of Ga.*, 243 Ga. 500, 501 (255 SE2d 14) (1979); *Williams v. Nat. Auto Sales*, 287 Ga. App. 283, 286-287 (1) (651 SE2d 194) (2007); *Barnett v. First Fed. &c. Assn.*, 169 Ga. App. 396, 399 (4) (313 SE2d 115) (1984); *Mayo v. Bank of Carroll County*, 157 Ga. App. 148, 149 (1) (276 SE2d 660) (1981). The determination of whether a quasi new contract has been created is ordinarily one for jury resolution. See *Vakilzadeh Enterprises v. Housing Auth. &c.*, 281 Ga. App. 203, 206 (635 SE2d 825) (2006).

Here, the only document reflecting the terms of the agreement between Jimmy Banks and Ed Echols was the Security Deed itself, which stated that monthly payments would be made "on the first day of each and every month, commencing on July 1st, 1980, and continuing until [the] principal and interest have been paid in full; . . . Final payment is June 14, 2000." Banks has asserted that from 1980 through 2000, she and Jimmy Banks repeatedly made late and irregular payments on the Security Deed. It has not been alleged, nor is there any evidence in the record to support a finding,

that a late payment was ever rejected or that, prior to June 2007, Ed Echols or anyone else ever expressed any dissatisfaction or intent to strictly enforce the terms of the Security Deed. This evidence is sufficient to create a jury question as to whether a quasi new contract had been created and whether Banks's conduct satisfied the terms of that new agreement. See OCGA § 13-4-4; *Smith*, 243 Ga. at 501; *Williams*, 287 Ga. App. at 286-287 (1); *Barnett*, 169 Ga. App. at 399 (4); *Vaughan v. Wrenn Bros.*, 163 Ga. App. 383, 384-385 (294 SE2d 609) (1982); *Mayo*, 157 Ga. App. at 149 (1); *Baxter v. Ga. Fed. &c. Assn.*, 152 Ga. App. 753, 754 (1) (264 SE2d 242) (1979). See also *Radha Krishna, Inc. v. Desai*, 301 Ga. App. 638, 641 (2) (689 SE2d 78) (2009); *Ackley*, 227 Ga. App. at 106 (2).

Moreover, a jury question has also been presented as to whether Echols provided Banks with reasonable notice of his intent to strictly enforce the agreement terms. See OCGA § 13-4-4; *Vaughan*, 163 Ga. App. at 385; *Baxter*, 152 Ga. App. at 754 (2). The record evidence indicates that in 1998, in response to Banks's inquiry about the debt's payoff value, Echols denied having any record of payments. After Banks allegedly provided proof of countless payments over the nearly 20-year period,[8] Echols continued to maintain that Banks nonetheless owed more than the principal value on the debt. Insisting that she did not, Banks delivered what she indicated to be her "last and final" payment on the Security Deed in June 2000. Echols waited nearly a year later, until March 2001, to return the payment and inform Banks for the first time that he "intend[ed] to rely on the exact terms of the agreement," demanding that she pay the alleged outstanding balance totaling over $17,000 within 30 days or face foreclosure. The record contains no further communication between the parties until Echols filed the instant lawsuit in June 2007. "Whether such communications were sufficient to provide the required notice is a disputed issue of fact which must be decided by a jury." (Citations omitted.) *Vaughan*, 163 Ga. App. at 385. See *Baxter*, 152 Ga. App. at 754-755 (2).

(c) Banks has also repeatedly challenged Echols's allegations related to the outstanding indebtedness and continues to assert that the debt was paid in full and that Echols's calculations are not supported in the record sufficient to support a grant of summary

---

[8] Although we do not rely on them for purposes of our analysis here, we note that there are numerous receipts and other documentary evidence in the record that would likely be admissible under an exception to the hearsay rule upon further development of the record. See OCGA §§ 24-3-8; 24-3-14 (b). See generally *Ga. Power Co. v. Irvin*, 267 Ga. 760, 766 (3) (482 SE2d 362) (1997); *Ross v. State*, 298 Ga. App. 525, 526-527 (680 SE2d 435) (2009); *Wheat Enterprises v. Redi-Floors*, 231 Ga. App. 853, 857-858 (3) (501 SE2d 30) (1998); *Harrison v. Martin*, 213 Ga. App. 337, 345 (3) (444 SE2d 618) (1994).

judgment. We agree.

Echols pled, by way of the default, that the remaining balance on the debt was $28,173.33. But, in her verified answer, Banks asserted that the debt had been paid in full and submitted records arguably supporting her contention. Finally, as explained above, a jury question has been presented as to whether the conduct of the parties created a quasi new contract, and that determination will impact the amount of outstanding indebtedness, if any. Under any circumstance, Banks was entitled to contest the amount of damages alleged when there existed conflicting relevant evidence and/or the amount of the alleged indebtedness was otherwise unsupported by the record. See generally *Harrell v. Ga. Dept. of Human Resources*, 300 Ga. App. 497, 502-503 (2) (685 SE2d 441) (2009); *McCorvey Grading &c. v. Blalock Oil Co.*, 268 Ga. App. 795, 796-797 (602 SE2d 842) (2004).

For these combined reasons, we hold that the trial court erred in granting summary judgment in favor of Echols and in granting his petition to foreclose on the subject property.

2. Banks argues further that the trial court erred in granting summary judgment in favor of Echols on her counterclaim. The trial court, however, did not rule on Banks's counterclaim, and this Court cannot address any issue on which the trial court did not rule. "This [C]ourt is for the correction of errors of law, and where the trial court has not ruled on an issue, we will not address it." (Punctuation and footnote omitted.) *Sol Melia, SA v. Brown*, 301 Ga. App. 760, 768 (3) (688 SE2d 675) (2009). Accordingly, it remains pending in the trial court and is not yet ripe for review.

*Judgment reversed. Smith, P. J., and Phipps, J., concur.*

DECIDED MARCH 10, 2010.

Eunice Banks, *pro se.*
*Ross & Levy, John D. Blair, Ted N. Echols*, for appellees.