**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 30, 2018**

# In the Court of Appeals of Georgia

A18A0904. WEICKERT v. HOME DEPOT U.S.A., INC.        DO-031

DOYLE, Presiding Judge.

Denis Weickert filed a negligence action against Home Depot U. S. A., Inc., after he slipped and fell in water on the floor of the garden center in one of its stores. Weickert appeals the trial court's grant of summary judgment to Home Depot, arguing that (1) he lacked knowledge of the "specific hazard" that caused his fall, and (2) he was distracted by a Home Depot employee, such that he was prevented from seeing the hazardous condition. For the reasons that follow, we affirm.

Viewed in the light most favorable to Weickert,[1] the record shows that he was a frequent patron of a Home Depot store in Suwanee for almost a decade. Each morning, the live plants in the store's garden center are watered, and "caution" signs

---

[1] See *Shekhawat v. Jones*, 293 Ga. 468, 469 (746 SE2d 89) (2013).

are placed on the floor in areas that are wet. On May 21, 2014, Weickert visited the garden center, which he had done on many occasions, to purchase a timer for his sprinkler. On the date in question, Weickert entered the store through the garden center, immediately approached an employee at the cashier stand, and requested assistance. The employee told Weickert to follow him, and Weickert began walking behind the employee. In Weickert's own words, when the employee came from behind the register, "I was talking to him and fell right in behind him. . . ." Within five to ten steps, Weickert realized that he was slipping in water, and he fell on his right leg, resulting in serious injuries and, ultimately, amputation of the leg.

Thereafter, Weickert sued Home Depot to recover damages, including medical expenses and lost wages, that he allegedly incurred as a result of his fall. Home Depot answered, and discovery ensued. The store manager prepared an affidavit, explaining that on the day of the incident the floor in the garden center was "noticeably and visibly wet, and it was surrounded by wet floor signs, including one not more than five feet from" where Weickert fell. Attached to the affidavit were photographs taken just after his fall depicting water on the floor and several "caution" signs.

In his deposition, Weickert acknowledged that plants need to be watered, and some of that water will inevitably end up on the floor. He also agreed that the garden

center has a significant amount of natural light and that there were no visibility issues on the day he fell. Finally, Weickert conceded that he might have seen water on the floor had he looked down. Nevertheless, Weickert explained that he did not glance down at the floor before he slipped and fell because he was looking at and following the cashier. According to Weickert, he was "more concerned in following" the employee as instructed, stating, "I wanted to get in and get out. So when [the employee] said follow me[,] I followed him." Similarly, he did not see any signs on the floor because he was "talking to [the employee] and fell right in behind him," such that he did not "have time to look around and stuff." Weickert also claimed that he walked three to four steps behind the employee, such that he could not see the water or path in front of him, and he did not anticipate that the employee would lead him through water. But during his deposition, Weickert admitted that in the photographs taken just after his fall, he could see which areas of the floor were wet and which were dry, as well as the caution signs.

Home Depot moved for summary judgment on the basis that Weickert had constructive knowledge of the hazardous condition, arguing that he slipped and fell in water that was (1) in plain view, (2) surrounded by "caution" signs, and (3) located in an area where he should have anticipated the presence of standing water. In

3

response, Weickert argued that there was a genuine issue of material fact as to whether he was distracted by the Home Depot employee at the time of his fall. Following a hearing, the trial court concluded that Home Depot had actual or constructive knowledge of the hazard, but exercised ordinary care by placing multiple, visible caution signs on the floor. With regard to Weickert's claim of distraction, the trial court found that the employee's statement to Weickert to follow him and Weickert's act of following the employee did not constitute distractions, nor did they relieve Weickert of his obligation to exercise ordinary care. This appeal followed.

> On appeal from a grant or denial of summary judgment, we conduct a de novo review, and we view the evidence and the inferences drawn from it in the light most favorable to the nonmoving party. A defendant demonstrates entitlement to summary judgment by showing that the record lacks evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case. The defendant does not need to affirmatively disprove the plaintiff's case, but may prevail simply by pointing to the lack of evidence. If the defendant does so, the plaintiff cannot rest on his pleadings, but must point to specific evidence that gives rise to a triable issue of fact.[2]

---

[2] (Punctuation omitted.) *Keisha, LLC v. Dundon*, 344 Ga. App. 278 (809 SE2d 835) (2018). See also OCGA § 9-11-56 (c) (Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together

With regard to premises liability cases, our Supreme Court has held that "as a general proposition[,] issues of negligence, contributory negligence[,] and lack of ordinary care for one's own safety are not susceptible of summary adjudication[,] but should [instead] be resolved by trial in the ordinary manner."[3] In Georgia, a proprietor has a statutory duty to exercise ordinary care to keep its premises safe.[4] Nevertheless, proof that an invitee tripped or fell, without more, "does not establish liability on the part of the property owner or occupier."[5] Rather, in order for a plaintiff to recover damages for injuries sustained in a slip-and-fall action, an invitee must prove "(1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to

---

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.").

[3] (Punctuation omitted.) *Robinson v. Kroger Co.*, 268 Ga. 735, 739 (1) (493 SE2d 403) (1997).

[4] See OCGA § 51-3-1. As a customer of Home Depot, Weickert was an invitee, to whom Home Depot owed this duty. See *Robinson*, 268 Ga. at 740 (1) ("The owner/occupier owes persons invited to enter the premises a duty of ordinary care to have the premises in a reasonably safe condition and not to expose the invitees to unreasonable risk or to lead them into a dangerous trap.").

[5] *Witt v. Ben Carter Properties, LLC*, 303 Ga. App. 107, 109 (692 SE2d 749) (2010).

5

actions or conditions within the control of the owner/occupier."[6] A plaintiff's evidentiary burden of proof concerning the second prong of this test is not shouldered, however, "until the owner establishes that the plaintiff was negligent, that is, [he] intentionally and unreasonably exposed [him]self to a hazard of which [he] knew or, in the exercise of reasonable care, should have known existed."[7]

1. Weickert argues that the trial court erred by granting Home Depot's motion for summary judgment because he lacked knowledge of the "specific hazard" he faced despite his exercise of ordinary care. Specifically, Weickert contends that he did not see the water on the floor, and, thus, he had no knowledge of the "specific hazard" which caused his fall, therefore creating an issue for the jury. He also contends that the "plain view" doctrine only applies to large objects, and that his frequent visits to the Home Depot store, without more, did not create constructive knowledge on his part of the particular standing water in which he slipped.

Weickert did not, however, make these arguments to the trial court. To the contrary, in his response to Home Depot's motion for summary judgment, he asserted only two arguments: (1) Home Depot had actual and constructive knowledge of the

---

[6] *Robinson*, 268 Ga. at 748-49 (2) (b).

[7] *LeCroy v. Bragg*, 319 Ga. App. 884, 885 (1) (739 SE2d 1) (2013).

6

hazard, and (2) under the particular facts of this case, the application of the distraction doctrine precluded summary judgment. Similarly, at the summary judgment motion hearing, Weickert focused on the distraction doctrine. We will not consider an issue raised for the first time on appeal "because the trial court has not had the opportunity to consider it."[8] Consequently, we do not address these new arguments.

2. Weickert contends that the trial court erred by granting summary judgment to Home Depot because he presented some evidence that he was acting with ordinary care at the time of his fall but was distracted by Home Depot's employee. We disagree.

> The distraction doctrine holds that one is not bound to the same degree of care in discovering or apprehending danger in moments of stress or excitement or when the attention has been *necessarily* diverted. The distraction doctrine is not an independent theory of recovery but may operate to excuse or negate a plaintiff's failure to discover the hazard *when the source of the distraction is attributable to the defendant*. Thus, the distraction doctrine is relevant only if the plaintiff

---

[8] *White Oak Homes, Inc. v. Cmty. Bank & Trust*, 314 Ga. App. 502, 504 (2) (724 SE2d 810) (2012) (punctuation omitted). See also *Banks v. Echols*, 302 Ga. App. 772, 778 (2) (691 SE2d 667) (2010) ("This Court is for the correction of errors of law, and where the trial court has not ruled on an issue, we will not address it.") (punctuation omitted).

has established that a hazard exists and that the defendant had superior knowledge of that hazard.[9]

(a) Here, there is no dispute that Home Depot had actual knowledge of the water on the floor of its garden center, and at summary judgment, Weickert conceded that Home Depot had arguably produced evidence that his "injury was a result of his own causal negligence." Therefore, the "the burden of production shift[ed] back to [him] to come forward with evidence that creates a genuine dispute of fact on the question of voluntary or causal negligence by [Weickert] or tends to show that any such negligence resulted from [Home Depot's] own actions or conditions under its control."[10] Thus, the sole issue on appeal is whether Weickert met his burden to put forth evidence that he was excused from discovering the open and obvious water on the floor of the garden shop because he was distracted by "something *in the control of [Home Depot]*, which purported distraction is *of such a nature* that [Home Depot] might have anticipated that it would divert [a customer's] attention."[11]

---

[9] (Citations and punctuation omitted; emphasis supplied.) *Bartenfeld v. Chick-fil-A, Inc.*, 346 Ga App. 759, 768 (3) (815 SE2d 273) (2018).

[10] *American Multi-Cinema, Inc. v. Brown*, 285 Ga. 442, 445 (2) (679 SE2d 25) (2009).

[11] (Emphasis supplied.) *Robinson*, 268 Ga. at 746 (2) (a).

Weickert claims that his failure to see the water was excused because after he asked a store employee for assistance, the employee told him to "follow [him]," and Weickert followed so closely behind the employee that he could not see around him to see the water or the warning sign.

As explained by the Supreme Court of Georgia in *Robinson* pursuant to the distraction doctrine:

> [O]ne is not bound to the same degree of care in discovering or apprehending danger in *moments of stress or excitement* or when the attention has been *necessarily* diverted. Application of the doctrine has the effect of excusing an invitee from exercising the otherwise required degree of care because of the circumstances created by the purported distraction. This is particularly true where the distraction is placed there by the defendant or where the defendant in the exercise of ordinary care should have anticipated that the distraction would occur. Thus, when an invitee asserts that the hazard was not seen before the injury because the invitee's attention was diverted, the examination of whether the invitee exercised ordinary care for personal safety must take into account the circumstances surrounding the presence of the diversion. *If the distraction has as its source the invitee, the invitee can no more take the benefit of it to excuse his lack of care for his own safety than one who creates an emergency can excuse himself because of its existence. . . .* However, where the distraction comes from without, and is of such

9

nature as naturally to divert the [invitee], and also of such nature that the defendant might naturally have anticipated it, the result is different.[12]

Here, Weickert approached the cashier and asked about a specific item, to which the employee responded "follow me." There is no evidence that the Home Depot employee continued to engage Weickert in conversation while walking him to the particular store aisle. Weickert then voluntarily chose to follow the employee so closely that he could not see around him. And while the employee walked through the water without pointing it out,[13] the pictures show, and Weickert admits, that there was a "wet floor" warning sign in the area where he fell, the expanse of water in the garden center was large, and Weickert knew from his numerous previous trips to the Home Depot that water collected in that area after the plants were watered.

Weickert's argument that he was "distracted" by an employee who was helping him at his request, when analyzed in the context of the specific circumstances here,

---

[12] (Citations and punctuation omitted; emphasis supplied.) Id. at 744-745 (2) (a).

[13] There is no duty to warn of an open and obvious hazard. See *McLemore v. Genuine Parts Co.*, 313 Ga. App. 641, 644 (722 SE2d 366) (2012).

10

cannot save his claim from summary adjudication.[14] The conversation was induced

by and anticipated by Weickert. *Robinson* made clear that if the purported distraction

has as its source the invitee, the invitee cannot benefit from it.[15] Further, Weickert's

decision to follow the employee through the store to find a specific item does not

convert the employee into a distraction or an obstruction of the alleged hazard. The

employee did not instruct Weickert to follow him in any particular manner; rather, it

---

[14] The store employee leading Weickert to the sprinkler timer was furthering the purpose of Weickert's visit to the store and was not "of such a nature" that Home Depot "might have anticipated that it would divert [Weickert's attention[.]" *Robinson*, 268 Ga. at 746 (2) (a) (citation omitted). See *Bartlett v. McDonough Bedding Co.*, 313 Ga. App. 657, 660 (722 SE2d 380) (2012) (rejecting the plaintiff's claim regarding the distraction doctrine because "the sole distraction Bartlett asserts, looking at merchandise, cannot be accepted under the distraction theory because that was the very activity that brought him to [the store]") (citation, punctuation and footnote omitted).

[15] See *Robinson*, 268 Ga. at 744-745 (2). See *Federated Dept. Stores v. Clum*, 205 Ga. App. 798, 799 (423 SE2d 716) (1992) (a customer's reliance on the distraction doctrine was misplaced because the conversation with the employee was self-induced, not created by the defendant, and could not have been reasonably anticipated by the defendant). Compare *Wallace v. Nissan of Union City*, 240 Ga. App. 658, 659 (524 SE2d 542) (1999) (reversing the grant of summary judgment to the defendant because the customer slipped and fell on ice in an area that lacked warning cones and had not been salted after an employee approached the customer, directed him to accompany him to the opposite side of the building, and engrossed him in conversation during the walk); *Jackson Atlantic, Inc. v. Wright*, 129 Ga. App. 857, 859-861 (1) (201 SE2d 634) (1973) (physical precedent only) (affirming a jury verdict in favor of the plaintiff who fell into a hole created by an open floor safe after the store manager asked her to "move back").

11

was Weickert's choice to follow so closely that he could not see his surroundings. In short, none of Weickert's conduct or choices was in the control of Home Depot, nor was the conduct of its employee of "such a nature" that Home Depot could have anticipated that Weickert's attention would "necessarily" be diverted.[16]

This is the linchpin of this and every distraction doctrine case. Not just any conduct of an employee becomes a distraction because a customer claims it is so. The distracting conduct must be in the control of the store owner and be of such a nature that it would *necessarily* divert a customer's attention. Necessarily means "[a]s a necessary result," "inevitably."[17] It is synonymous with "automatically" and "unavoidably."[18] To hold otherwise results in virtually everything that happens at a premises becoming a distraction in the eye of the customer.[19] The distraction doctrine

---

[16] *Robinson*, 268 Ga. at 746 (2) (a). There is no evidence that the employee engaged in any out of the ordinary conduct. Instead, the evidence is that he simply walked through the store.

[17] Oxford English Dictionary, OED Online http://www.oed.com/view/Entry/125625 (October 18, 2018).

[18] Id.

[19] *Robinson*, 268 Ga. at 744 (2) (a) ("[l]ooking at displayed merchandise or a store's aisle signage has been repeatedly found to constitute a self-induced distraction") (collecting cases); *Bartlett*, 313 Ga. App. at 660 ("the sole distraction [plaintiff] asserts, looking at merchandise, cannot be accepted under the distraction

12

contemplates "moment[s] of stress or excitement," not everyday commonplace occurrences.[20]

Accordingly, the trial court properly granted summary judgment to Home Depot in this case.

(b) The dissent relies on *Barentine v. Kroger Co.*[21] However, *Barentine* was not a distraction doctrine case.[22] Instead, the Supreme Court of Georgia granted certiorari "to consider whether the Court of Appeals correctly applied the rules applicable to the contradictory testimony of a party witness."[23] The Court of Appeals reversed the trial court's denial of Kroger's motion for a directed verdict, construing Barentine's

---

theory because that was the very activity that brought him to [the premises]"); *Long John Silver's v. Coleman*, 223 Ga. App. 864, 865-866 (479 SE2d 141) (1996) ("Any distraction was self-induced by [the plaintiff's] decision to read the sign while walking rather than stop to read it, preventing recovery.").

[20] *Robinson*, 268 Ga. at 746 (2) (a).

[21] 264 Ga. 224 (443 SE2d 485) (1994).

[22] As noted in *Robinson*, the *Barentine* Court did not mention the distraction doctrine. See *Robinson*, 268 Ga. at 745 (2) (a).

[23] *Barentine*, 264 Ga. at 224.

contradictory testimony against him.[24] The Supreme Court agreed that portions of Barentine's contradictory testimony should have been construed against him, but reversed this Court because the favorable portion thereof was not the only evidence that Barentine exercised reasonable care for his own safety.[25]

Nonetheless, after *Barentine* was decided, certain opinions of the Court of Appeals treated it as a distraction doctrine case. As the Supreme Court explained in *Robinson*:

> [s]ince the *Barentine* decision, the Court of Appeals has taken divergent paths when discussing the distraction theory in conjunction with an invitee's exercise of ordinary care for personal safety. When an *employee-generated conversation* is proffered as the reason why the invitee was not looking at the floor, the plaintiff has been found, citing *Barentine*, to have presented evidence of the exercise of reasonable care and thereby precluded summary judgment for the defendant. Recently, [in *Carr v. Sears, Roebuck & Co*,[26]] the Court of Appeals determined

---

[24] See id. at 225.

[25] See id.

[26] 226 Ga. App. 768, 770 (487 SE2d 415) (1997) ("Even though [the plaintiff] testified that she was not distracted by anything . . . , in fact, she was responding to the sales associate's request that she move to the front of the counter at the time she tripped over the box. . . . *Until further clarification of Barentine*, we are constrained to hold that any communication with a store employee under circumstances such as those presented here, whether initiated by the customer or the employee, is 'some

14

that any conversation between a customer and an employee, regardless of who initiated communication, is some evidence of the invitee's exercise of ordinary care.

On the other hand, the appellate court took a more expansive view of *Barentine* in *Ferguson v. Scadron*,[27] and ruled that the [plaintiff's] offer of a specific reason for not looking where he was going, regardless of the involvement of a store employee, created a jury question, since it was a circumstance where the exercise of reasonable care demands a focus away from the floor. But in [two other Court of Appeals cases[28]], . . . the proffer of a plausible reason why the invitee was not looking at the floor did not preclude summary judgment in favor of the defendant.[29]

Thus, to rectify the confusion caused by this Court's decisions after *Barentine*, the *Robinson* Court clarified its holding:

---

evidence' that a plaintiff was exercising reasonable care for his own safety, thus precluding summary judgment.") (emphasis supplied).

[27] 227 Ga. App. 614, 616 (489 SE2d 873) (1997).

[28] See *Freyer v. Silver*, 227 Ga. App. 253 (488 SE2d 728) (1997) (McMurray, J., dissenting); *Parks-Nietzold v. J. C. Penney*, 227 Ga. App. 724 (490 SE2d 133) (1997) (McMurray, J., dissenting),

[29] (Citation and punctuation omitted; emphasis supplied.) *Robinson*, 268 Ga. at 745-746 (2) (a).

[W]hen an invitee explains that he was not looking at the location of the hazard which caused injury *because of something in the control of the owner/occupier, which purported distraction is of such a nature that the defendant might have anticipated that it would divert an invitee's attention*, e.g., the conduct of a store employee,[30] the premises construction or configuration, or a merchandise display of such a nature that its presence would not have been anticipated by the invitee, the invitee has presented some evidence that [the invitee] exercised reasonable care for [the invitee's] own safety. It will then be for the fact-finder to determine if the injury sustained was proximately caused by the defendant's negligence and whether the plaintiff failed to exercise reasonable care for personal safety.[31]

---

[30] While there are certainly instances where "the conduct of a store employee" is "of such a nature that the defendant might ... anticipate[] that it would divert an invitee's attention," the plain, palpable, and undisputed facts in this particular case demonstrate that the Home Depot employee was not a distraction. See *Robinson,* 268 Ga. at 746 (2) (a) (citation omitted); OCGA § 9-11-56(c).

[31](Citation and punctuation omitted). Id. at 746 (2) (a).

Thus, *Barentine* and cases such as *Carr* and *Ferguson* were clarified to ensure that distractions caused by or within the control of the invitee are insufficient to meet the plaintiff's burden of production on summary judgment.[32]

*Judgment affirmed. Mercier, J., concurs. Dillard, C. J, concurs in part and dissents in part.*\*

**\* DIVISION TWO OF THIS OPINION IS PHYSICAL PRESCEDENT ONLY. SEE COURT OF APPEALS RULE 33.2(a).**

---

[32] See id. at 748 (2) (b).

A18A0904. DENIS WEICKERT v. HOME DEPOT U.S.A., INC.

DILLARD, Chief Judge, concurring in part and dissenting in part.

This case is the poster child for the difficulty often faced by both trial and appellate courts in applying the "distraction doctrine."[1] Indeed, to say that this doctrine is imprecise is the height of charity. Nevertheless, this Court must determine if there is a genuine issue of material fact as to whether Weickert was distracted to such a degree that he is "not bound to the same degree of care in discovering or

___

[1] I concur fully in Division 1 of the majority's opinion. As a result, this division of the opinion may be cited as binding precedent. *See* Court of Appeals Rule 33.2 (a) (1).

apprehending danger" because his "attention [was] necessarily diverted."[2] In doing so, we are asked to consider whether the circumstances surrounding Weickert's tragic injury—which resulted in amputation of his leg —are such that Home Depot should have anticipated Weickert being distracted by an employee directing him to follow along while they were carrying on a conversation. The majority answers this question in the negative, claiming Weickert "induced and anticipated" the conversation that ultimately caused his distraction and injury, and thus he cannot benefit from a distraction of his own making. But if the majority is correct, then injured plaintiffs may never be able to avail themselves of the distraction doctrine when they are injured shortly after seeking assistance from an employee. In my view, this stretches the reasoning of *Robinson v. Kroger Co.*[3] beyond the breaking point. Employees are there to serve customers. Weickert was a customer who needed help. An employee offered assistance, directed Weickert to follow him, engaged in conversation with Weickert, and then led him through pooled water. Is this enough to constitute a distraction within the meaning of the doctrine? I have my doubts. But I do think there

---

[2] *Robinson v. Kroger Co.*, 268 Ga. 735, 744 (2) (a) (493 SE2d 403) (1997) (citation and punctuation omitted).

[3] 268 Ga. 735 (493 SE2d 403) (1997).

2

is a genuine issue of material fact as to whether these circumstances are such that Weickert can avail himself of the distraction doctrine, so I respectfully dissent.

In *Robinson v. Kroger Co.*, the Supreme Court of Georgia clarified the scope of the distraction doctrine, holding that "when an invitee explains that he was not looking at the location of the hazard which caused injury because of something in the control of the owner/occupier, which purported distraction is of such a nature that the defendant might have anticipated that it would divert an invitee's attention" (*e.g.*, "the conduct of a store employee"), then "the invitee has presented some evidence of the exercise of reasonable care for the invitee's own safety."[4] And it is then up to a jury to determine if "the injury sustained was proximately caused by the defendant's negligence and whether the plaintiff failed to exercise reasonable care for personal safety."[5] Moreover, in applying the distraction doctrine, this Court has held that when an invitee presents evidence of a conversation or interaction with an employee, which allegedly distracted the invitee from noticing a hazard, a jury must determine whether the distraction doctrine applies.[6]

---

[4] *Id.* at 746 (2) (a).

[5] *Id.*

[6] *See Wallace v. Nissan of Union City, Inc.*, 240 Ga. App. 658, 661 (2) (524 SE2d 542) (1999) (holding that when the defendant's employee and invitee were

3

Here, the majority concludes that Home Depot is entitled to judgment as a matter of law because the conversation between Weickert and its employee was induced and anticipated by Weickert. But to hold that a customer forfeits the possible protection of the distraction doctrine by asking for help from an employee ignores the duty owed by an owner/occupier to an invitee. As our Supreme Court explained in *Robinson*, by encouraging others to enter their premises "to further the owner/occupier's purpose, the owner/occupier makes an implied representation that reasonable care has been exercised to make the place safe for those who come for that

---

engrossed in conversation, the jury was required to decide whether the employee distracted the invitee from discovering the hazard); *Laffoday v. Winn Dixie Atlanta, Inc.*, 235 Ga. App. 832, 833-834 (510 SE2d 598) (1998) (holding that the invitee presented some evidence she exercised reasonable care for her own safety when, although she had been warned to be careful about water in the area, she had no actual knowledge of the particular water which caused her to slip while she was startled by and "responding to a page over the intercom from the store manager requesting that [she] report to the front of the store"); *Carr v. Sears, Roebuck & Co.*, 226 Ga. App. 768, 770 (487 SE2d 415) (1997) (holding that even when the hazard was "a large object in plain view" and the invitee "testified that she was not 'distracted' by anything[,]" evidence that "she was responding to the sales associate's request that she move to the front of the counter at the time she tripped . . . . was some evidence that she was exercising reasonable care for her own safety"); *cf. Bartlett v. McDonough Bedding Co.*, 313 Ga. App. 657, 660 (722 SE2d 380) (2012) (noting that the plaintiff's assertion he was distracted by looking at merchandise could not be accepted under the distraction theory). In stark contrast to this case, there was no interaction between the plaintiff and any employee in *Bartlett*.

4

purpose[.]"[7] It is this very representation that forms "the basis of the liability of the owner/occupier for an invitee's injuries sustained in a 'slip-and-fall.'"[8] And it is in this light that "an invitee's exercise of ordinary care for personal safety must be examined."[9] So, even though Weickert asked for assistance from an employee (as customers often do), there can still be genuine issues of material fact as whether the employee distracted him and whether he exercised reasonable care for his own safety.[10]

It is true, of course, that if the distraction has as its source the invitee, "the invitee can no more take the benefit of it to excuse his lack of care for his own safety than one who creates an emergency can excuse himself because of its existence."[11]

---

[7] *Robinson*, 268 Ga. at 741 (1).

[8] *Id.*

[9] *Id.*

[10] *Wallace*, 240 Ga. App. at 659, 661 (2) (finding genuine issue of material fact as to application of distraction doctrine when employee offered help, customer expressed an interest in a used car, and employee suggested customer "accompany him to walk toward the opposite side of the sales building[,]" and customer slipped and fell in ice while they were "engrossed in conversation").

[11] *Robinson*, 268 Ga. at 744 (2) (a) (punctuation omitted); *see id.* (noting that self-induced distractions may include "a plaintiff's release of a cart[,]" a "conversation with companions[,]" or "[l]ooking at displayed merchandise or a store's aisle signage").

And the majority certainly embraces this principle, holding that, under the specific circumstances presented, Weickert was the source of the distraction. I disagree. A trial court can only conclude as a matter of law that "the facts do or do not show negligence on the part of the defendant or the plaintiff . . . where the evidence is plain, palpable and undisputable."[12] And when "reasonable minds" can differ as to the conclusion to be reached "with regard to questions of whether an owner/occupier breached the duty of care to invitees and whether an invitee exercised reasonable care for personal safety, *summary adjudication is not appropriate.*"[13]

Here, Weickert testified that the accident happened quickly, and he did not glance down at the floor before he slipped and fell because he was looking at and speaking with the employee. According to Weickert, he was "more concerned in following" the employee as instructed because he "wanted to get in and get out." And Weickert did not see any signs on the floor because he was "talking to [the employee] and fell right in behind him," such that he did not "have time to look around and

---

[12] *Id.* at 739 (1) (quoting *Ellington v. Tolar Const. Co.*, 237 Ga. 235, 237 (II) (227 SE2d 336) (1976)); *accord Landings Ass'n, Inc. v. Williams*, 291 Ga. 397, 399 (728 SE2d 577) (2012).

[13] *Robinson*, 268 Ga. at 740 (1) (emphasis supplied); *accord Duff v. Bd. of Regents of Univ. Sys. of Ga.*, 341 Ga. App. 458, 461 (800 SE2d 640) (2017).

6

stuff." As Weickert explained in his affidavit, because he was following three to four steps behind the employee, he was unable to see obstacles or hazards directly in front of the employee, including the water in which he slipped. Thus, Weickert presented some evidence that he did not see water on the floor because he was speaking with and following behind the employee as instructed, and this Court should not disregard that evidence.[14] It is not our role to "sort through the evidence, resolve conflicts, and make findings of fact based on the evidence it finds credible,"[15] and the majority comes close to doing just that by characterizing Weickert as "voluntarily [choosing] to follow the employee so closely that he could not see around him." In my view, whether Home Depot might have anticipated that its employee's instruction to Weickert to follow him and their ensuing conversation would divert Weickert's

---

[14] *Cowart v. Widener*, 287 Ga. 622, 633 (3) (c) (697 SE2d 779) (2010) ("[A] witness's uncontradicted testimony [cannot] simply be disbelieved in order to eliminate the evidence it provides."); *accord Elder v. Hayes*, 337 Ga. App. 826, 831 (1) (788 SE2d 915) (2016).

[15] *Hardin v. Hardin*, 301 Ga. 532, 536 (801 SE2d 774) (2017) (punctuation omitted); *accord Montgomery v. Barrow*, 286 Ga. 896, 898 (1) (692 SE2d 351) (2010). Similarly, the trial court is not a trier of fact on a motion for summary judgment. *Hardin*, 301 Ga. at 537; *accord Covington Square Assocs., LLC v. Ingles Markets, Inc.*, 287 Ga. 445, 448 (696 SE2d 649) (2010).

attention away from the pooled water on the floor,[16] or that Weickert would follow close behind the employee and not notice that he was being led through the water, are questions for a jury.

Furthermore, a grant of summary judgment to Home Depot does not comport with the holding of *Barentine v. Kroger Co.*[17] In that case, the Supreme Court of Georgia pointed to the invitee's testimony that upon entering the store, he saw the nighttime cashier standing away from the only open register; that as he was walking toward the check-out line he "saw the cashier standing in the same place"; that he looked at the cashier "as he was walking toward the check-out line so that he could tell him he was ready to check out; and that as he told the cashier he was ready to

---

[16] It was only *after* the Home Depot employee instructed Weickert to follow him that Weickert—talking to and following behind the employee—slipped and fell. These facts are distinguishable from those presented in *Federated Dep't Stores, Inc. v. Clum*, 205 Ga. App. 798 (423 SE2d 716) (1992), upon which the majority relies. In *Clum*, while the invitee watched, a sales associate "unrolled two or three feet of a runner in the aisle." *Id*. at 799. Then, after declining to make a purchase, the invitee "engaged in a conversation with the sales associate which lasted several minutes." *Id*. She then turned to leave, and, "forgetting about the partially unrolled rug in the aisle, tripped" over the rug. *Id*. Rejecting the claim of distraction, this Court held that "her alleged distraction was self-induced, was not created by appellant, and could not have been reasonably anticipated by appellant." *Id*.

[17] *Barentine v. Kroger Co.*, 264 Ga. 224 (443 SE2d 485) (1994).

8

check out, he slipped and fell."[18] Our Supreme Court held that this testimony—*i.e.*, that the invitee was looking at the cashier—constituted "some evidence" the invitee exercised reasonable care for his own safety.[19] And if merely looking at a cashier constitutes "some evidence" that an invitee exercised reasonable care for his own safety, then talking to and following behind an employee (as directed) certainly does. Suffice it to say, we are bound by our Supreme Court's decisions and must faithfully apply them in this case.[20]

In sum, the majority misapplies *Robinson* and runs afoul of *Barentine*. Under these binding precedents, a customer who asks for help from an employee and is injured shortly thereafter is not necessarily prohibited from availing himself of the

---

[18] *Id.* at 225.

[19] *Id.*

[20] *See* Ga. Const., art. VI, § VI, ¶ VI (1983) ("The decisions of the Supreme Court shall bind all other courts as precedents."); *State v. Smith,* 308 Ga. App. 345, 352 (1) (707 SE2d 560) (2011) ("[T]he doctrine of stare decisis prohibits this Court from ignoring the valid precedent of a higher court."); *see also State v. Jackson,* 287 Ga. 646, 658 (5) (697 SE2d 757) (2010) ("Stare decisis is an important principle that promotes the rule of law . . . ."); Kurt T. Lash, *Originalism, Popular Sovereignty, and Reverse Stare Decisis,* 93 Va. L. Rev. 1437, 1454 (2007) (noting that "[v]ertical stare decisis refers to the binding effect of precedent on lower courts[,]" and that "[s]erious rule of law costs would follow if lower courts were free to ignore precedent established by a higher court of appeal").

9

distraction doctrine. And Weickert's testimony that he was distracted by talking to and looking at the employee he was following through the store when he slipped and fell constitutes "some evidence" he exercised reasonable care for his own safety.[21] As a result, the evidence on the issue of Weickert's distraction (or lack thereof) was not plain, palpable, and undisputed,[22] and this case should proceed to a jury trial.[23]

---

[21] *See supra* note 6.

[22] *See supra* notes 12-13 & accompanying text.

[23] *See* Ga. Const., art. I, § I, ¶ XI (a) (1983) (providing that the right to a jury trial "shall remain inviolate").